*In re* ESTATE OF INGEBORG M. KREMER, Deceased (Patricia Mace, Petitioner-Appellant, v. Magna Trust Bank, Ex'r, Respondent-Appellee).

Fifth District   No. 5—88—0447

Opinion filed October 23, 1989.

John J. Kurowski, P.C., of Belleville (John J. Kurowski and Edward E. Johnston, of counsel), for appellant.

Thompson & Mitchell, of Belleville (Mark J. Stegman, of counsel), for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Ingeborg Kremer died January 20, 1987, a few months after the death of her husband, Otto Kremer. Her last will and testament dated May 26, 1983, was admitted to probate, and Magna Trust Company was appointed as executor on January 26, 1987. Ingeborg's will left her entire estate in equal shares to her seven children, Norbert Kremer, Harald "Skip" Kremer, Patricia Mace, Barbara Diehl, Bruce Kremer, Ingrid Kremer and Andrew Kremer.

During the administration of this estate the executor filed a petition, seeking approval of certain acts of the executor with regard to the disposition of personalty of the estate. Patricia Mace, a daughter and beneficiary under the will, filed a response to the petition, objecting to the disposition of some of the property. A hearing on the matter was conducted whereupon the court entered an order dispensing

with a final disposition as to the personal property. Patricia Mace appeals from the court's disposition of three matters, including the distribution of Ingeborg Kremer's cameras, a collection of coins, and a loan purportedly made to Ingeborg Kremer.

The court order entered May 2, 1988, stated in part:

"The decedent possessed certain cameras during her lifetime and made completed gifts of such cameras to Harald Kremer, Norbert Kremer, Andrew Kremer and Bruce Kremer during her lifetime, and the estate of the decedent had no interest in such cameras at the time of the decedent's death. The decedent also possessed various items of photographic equipment and darkroom equipment that formerly belonged to her deceased husband, and the gifts of cameras to the aforesaid heirs did not include gifts of such photographic equipment and darkroom equipment."

We first address the claim of Patricia Mace that the court's finding that the decedent made completed *inter vivos* gifts of certain cameras to her four sons was against the manifest weight of the evidence.

When Ingeborg Kremer's husband Otto died, he owned an extensive collection of camera equipment and darkroom equipment. This collection become the property of Ingeborg, since she was the sole beneficiary of Otto's will. Roger Beaman, who is the president and chief executive officer of Magna Trust Company, stated in a petition filed with the probate court that the camera equipment did not constitute assets of Ingeborg's estate. However, it was the executor's position that the darkroom equipment was included in the estate inventory. His conclusion was based on discussions he had with the Kremer children, wherein it became evident to him that Ingeborg gave the cameras to the boys. Mr. Beaman testified that he spoke with all of the children except Bruce, and that all of those he spoke with, except Patricia Mace, indicated that Ingeborg had given the camera equipment to the boys as gifts. Mr. Beaman testified that it was his impression that Ingeborg gave the camera equipment to her sons in order to equalize the distribution of gifts of jewelry she had made to the girls.

At the hearing, Barbara Diehl testified that prior to her mother's death, her mother had distributed most of her jewelry among Ingrid, Patricia and herself. Mrs. Diehl testified that she believed the cameras and camera equipment were given to her brothers prior to her mother's death, and that those items were not to be included as estate assets. She believed, however, that the darkroom equipment was not given to her brothers and would be part of the estate. Ingrid Kremer also testified that prior to her death her mother gave the camera

equipment to her sons.

Andrew Kremer testified that after his father died, his mother told him that he and Skip should get together with Bruce and they should take whatever camera equipment they desired. He further testified that later, when Norbert came to visit his mother, it was determined that the camera equipment was to be divided among the four boys. It was then that Andrew and Norbert took the camera equipment from their father's bedroom and put it in Andrew's room, which was in the basement of their mother's home. Andrew testified that until that time the camera equipment had always been kept in his father's room.

Norbert testified that when he visited his mother for Christmas in 1986, she made it very clear to him that she intended the cameras to be divided among her sons. Harald "Skip" Kremer also testified that shortly before Christmas of 1986, his mother told him that he should take his share of the cameras. Andrew was present when his mother advised Harald of this. Harald testified that Andrew was compiling an inventory of the cameras and that he and his brothers agreed that they would get together at a later time to decide how to divide the cameras.

Although Harald and the others received a copy of the inventory of the camera equipment prior to their mother's death, it wasn't until after her death that the four brothers divided the camera equipment. Harald testified that he and his brothers waited until after their mother's death to divide the items because they did not consider it a high priority, and it was not something they felt they had to do immediately.

Mr. Jack Strobel was called as a witness. He testified that he is the owner of City Photo Supply, a camera supply company. Mr. Strobel testified that shortly after Otto Kremer's death, Andrew Kremer contacted his store about having the camera equipment appraised. Jack Strobel testified that the appraisal was only with regard to the camera equipment, and it had nothing to do with the darkroom equipment.

■ We note at the outset that it is the province of the trial court to weigh the testimony, together with all the other evidence and circumstances appearing in the case, and determine whether the property in question belongs to the estate of the decedent. The court's finding on the issue may not be upset unless it is against the manifest weight of the evidence. *Storr v. Storr* (1946), 329 Ill. App. 537, 547, 69 N.E.2d 916, 921.

■ It is presumed that when a mother transfers or delivers prop-

erty belonging to her to her child a gift of the same is intended. (*Nolan v. American Telephone & Telegraph Co.* (1945), 326 Ill. App. 328, 343-44, 61 N.E.2d 876, 882.) Appellant, Patricia Mace, in her brief argues, however, that clear and convincing evidence of a change in possession of the camera equipment was not shown, especially as in this case Andrew and his mother shared a residence. Mrs. Mace cites *In re Estate of McIntire* (1976), 44 Ill. App. 3d 726, 358 N.E.2d 903, in support of this argument. *McIntire* held that the evidence did not establish that a valid, completed, *inter vivos* gift of livestock had been made to the purported donee. The evidence in that case consisted of testimony by the alleged donee Sattie York, and others, that the decedent had told them at unspecified times that he had given the cattle to Sattie York. *McIntire* is distinguishable since there was ample evidence in the record in this case that the intent of Ingeborg Kremer to give the camera equipment to her sons was accomplished.

The testimony was that after Ingeborg advised her sons of her intent, Andrew and Norbert moved all of the camera equipment out of their father's bedroom downstairs to Andrew's bedroom. Until that time the camera equipment had always been kept in Otto Kremer's room. Barbara, Andrew, Harald and Patricia all testified that Harald even took several cameras with him when he returned to Ohio after visiting with his mother in December of 1986. The testimony further revealed that because there was rarely a time when all four of the boys were together to divide the equipment, they agreed that actual division of the items would be made at a later time. The fact that Andrew made arrangements with Jack Strobel prior to his mother's death to appraise the camera equipment further supports the finding that the *inter vivos* gift had been completed and that the boys waited to make an actual division of the property until after they could obtain an inventory and estimate of the value of the property.

We find applicable to this case the rule that delivery by the issuer to one of the joint owners is delivery for the benefit of all and satisfies the requirement of delivery where, as here, there is donative intent. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 72, 185 N.E.2d 850, 856, citing *Maciaszek v. Maciaszek* (1961), 21 Ill. 2d 542, 173 N.E.2d 476.) We have carefully considered the evidence as shown by the record in this case and agree with the trial court's conclusion that the decedent made completed gifts of the camera equipment prior to her death. The decedent's words of intent to distribute the camera equipment among her sons, and the delivery and surrender of possession and control to her son Andrew as trustee on behalf of each of the brothers satisfies us that the camera equipment was given to Inge-

borg Kremer's sons by her prior to her death and is therefore not a part of her estate.

The next issue on appeal concerns the disposition of certain coins. The petition for issuance of citation filed by Patricia Mace asserts that she believes coins belonging to the estate are in the possession of certain legatees or other individuals which they are concealing from the executor for their own benefit. After a hearing on the matter, the court in its order of May 2, 1988, found:

> "All of the coins possessed by Barbara Diehl and Andrew Kremer that were inventoried by them and turned over to the Executor of the estate of the decedent have been accounted for and inventoried in this estate by the Executor. The two (2) bags of coins referred to in Paragraph 10 of the Executor's Petition that were allegedly missing have been accounted for and inventoried by the Executor in this estate."

In her brief, Patricia Mace argues that the trial court erred in not ordering that an accounting be conducted to determine the whereabouts of the alleged missing coins. At trial Patricia Mace testified that the night before her mother died, she and Barbara sorted the gold coins from her mother's coin collection and divided them into bags, one bag for each of Ingeborg Kremer's children. The remaining coins were placed into seven bags, one designated for each child, and placed in Otto Kremer's bedroom closet. Patricia testified that she took with her the bags of coins designated for Norbert, Ingrid, Skip and herself. Andrew was given his portion, and Barbara took a bag for Bruce and herself. Patricia explained that before she left the house Norbert complained about the division of coins. Patricia testified that she kept her portion and Ingrid's portion, and as Norbert threw her out of the house, Patricia gave Norbert the bags of coins designated for Skip and Norbert. She testified that that was the last time she saw those coins.

Andrew Kremer testified that just prior to his mother's death Ingrid, Barbara and Patricia divided the coins into small bags and attempted to distribute them among each of Ingeborg's children. Norbert objected to this and demanded that all of the coins be returned to the estate. Andrew testified that the coins were taken to Patricia Mace's house. Later Patricia turned the coins over to Andrew and he signed a receipt for them. Andrew testified that Barbara then took the coins home for safekeeping, until she and Andrew took them to an appraiser. He remembered that at the time of the appraisal there were seven bags of coins containing a total of 49 coins. Andrew testified that after the coins were appraised they were taken to the office

of Mr. Kurowski, the attorney representing Patricia Mace. The coins were later delivered to Mr. Obernagel, who works for Magna Trust Company. Andrew testified that to the best of his knowledge all of the coins for which he signed the receipt for Patricia Mace were accounted for on the inventory prepared by the appraiser.

Barbara Diehl's testimony supported Andrew's version of the disposition of the coins. Barbara testified that the coins were taken to her house and were later taken by her and Andrew for an appraisal. She testified that she did not know the whereabouts of the alleged missing coins.

Both George Obernagel and Roger Beaman of Magna Trust Company testified that during their investigation they questioned each family member, but that their efforts to locate the alleged missing coins proved unavailing.

■ A review of the record shows that there were conflicts between the testimony of Patricia Mace and that of the other witnesses as to the existence of additional coins. The trial court had the opportunity to observe the manner and demeanor of the witnesses when testifying. Credibility of the witnesses is a matter for the trial court to determine, and a court of review will not disturb its findings when evidence is contradictory unless they are against the manifest weight of the evidence. *Johnson v. Fulkerson* (1957), 12 Ill. 2d 69, 145 N.E.2d 31; *Northern Trust Co. v. City of Chicago* (1954), 4 Ill. 2d 432, 123 N.E.2d 330.

■ The evidence shows that an investigation was conducted as to the alleged missing coins by Roger Beaman and George Obernagel of Magna Trust Bank. Each of Ingeborg Kremer's children was interviewed and inquiries were made as to the existence of any coins other than those accounted for in the estate. The trial court's determination that the alleged missing coins have been accounted for and inventoried by the executor is not against the manifest weight of the evidence. See, *e.g., In re Estate of Denler* (1980), 80 Ill. App. 3d 1080, 1090, 400 N.E.2d 641, 649; *Storr v. Storr* (1946), 329 Ill. App. 537, 547-48, 69 N.E.2d 916, 921.

The final issue for our consideration is whether the trial court erred in permitting an offset to Andrew Kremer for an alleged $3,000 loan he made to Ingeborg Kremer. It is undisputed that a photocopy of a check in the amount of $5,000, admitted into evidence in the trial court represents a loan Andrew made to his mother. Roger Beaman testified that he was given photocopies of checks, one for $5,000, a check for $3,000, and one for $2,000. The checks for $5,000 and $3,000 are drawn on the account of Andrew Kremer and made pay-

able to Ingeborg Kremer. The backs of those checks show they were endorsed by Ingeborg Kremer. Roger Beaman testified that based on the information furnished to him, the check for $3,000 represented payment for tools and guns Andrew purchased from his mother. Mr. Beaman testified that he believed Andrew was due $3,000, which represents the unpaid balance due on the loan.

Barbara Diehl testified that she was aware of the $5,000 loan Andrew made to her mother. Mrs. Diehl testified that to her knowledge part of the loan had been satisfied by her mother and part of the loan had been credited as payment by Andrew for the tools and guns he purchased from Ingeborg Kremer.

Andrew testified that he paid his mother $3,000 for the tools and guns, which was the total purchase price agreed upon by he and his mother. Andrew further testified that he loaned his mother $5,000 and was repaid $2,000, leaving a balance due of $3,000.

Patricia Mace testified that she wrote the check for $2,000 payable to Andrew Kremer, as partial payment of the loan to Ingeborg Kremer. Patricia testified that she recalls that her mother told her when the check for $2,000 was written that it was the final payment of a loan for $5,000. Patricia could not determine, however, when the other payment was made.

We find that there was sufficient evidence presented to prove Andrew Kremer had not been paid the $3,000 balance on the loan he had made to his mother. However, the record reveals that Andrew Kremer did not file a claim against the estate for the $3,000 due him. Section 18—12 of the Probate Act of 1975 (Ill. Rev. Stat. 1987, ch. 110½, par. 18—12) provides that "[a]ll claims against the estate of a decedent *** not filed with the representative or the court within 6 months after the entry of the original order directing issuance of letters of office are barred as to all of the decedent's estate."

■ Section 18—12 of the Act is not merely a general statute of limitations. This section was adopted for the purpose of facilitating early settlement of estates. A failure to file a claim within the statutory period bars the claimant from participating in the uninventoried assets of the estate. This is true even if the executor has personal knowledge of the claim. (*In re Estate of Newcomb* (1972), 6 Ill. App. 3d 1094, 287 N.E.2d 141, citing *Pratt v. Baker* (1964), 48 Ill. App. 2d 442, 446, 199 N.E.2d 307, 308, *cert. denied* (1967), 389 U.S. 874, 19 L. Ed. 2d 157, 88 S. Ct. 165.) Furthermore, where a legal claim should have been, but was not, filed against the estate within the statutory period, relief will not be accorded by the application of equitable principles. *Abrams v. Schlar* (1960), 27 Ill. App. 2d 237, 169 N.E.2d

583; *Austin v. City Bank* (1936), 288 Ill. App. 36, 5 N.E.2d 585; *Alderson v. Estate of Alderson* (1922), 226 Ill. App. 176.

■ In the instant case, had Andrew Kremer complied with section 18—12, we would agree with the trial court's finding. However, since the record reveals that no claim was filed by Andrew Kremer or on his behalf with regard to the $3,000 due him, the trial court erred in allowing an offset against amounts charged to Andrew's distributive share of the estate.

In view of the foregoing, we affirm the trial court's disposition of the cameras and the coins and reverse that portion of the trial court's order which permitted an offset to Andrew Kremer for the $3,000 loan.

Affirmed in part; reversed in part.

HOWERTON and LEWIS,* JJ., concur.

───────

*Justice Lewis replaces Justice Welch, who recused himself after the cause was taken under advisement.