# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Parker*, 2011 IL App (1st) 102871

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF AGNES B. PARKER, Deceased (Estate of Agnes B. Parker, Deceased, by Bernard L. Bush, Francis A. Bush, Mary Margaret Myers, Anne Marie Allison, Marjorie McCollom and Janice Bush, as Executor of the Estate of Patricia A. Bush, Petitioners-Appellees, v. Sharon McCollom, Respondent and Counterplaintiff-Appellant (Estate of Agnes B. Parker, Deceased, Counterdefendant-Appellee)). |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-2871 |
| Filed | August 4, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The counterclaim filed against decedent's estate by respondent executrix alleging that she was owed compensation for services rendered to decedent during her lifetime was properly dismissed as untimely pursuant to section 18-12(b) of the Probate Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-P-2377; the Hon. Jeffery A. Malak, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Offices of Alan E. Sohn, of Chicago (Alan E. Sohn, of counsel), for appellant.

Righeimer Martin & Cinquino, P.C., of Chicago (David A. Martin, Melinda C. Martin, and Frank R. Martin, of counsel), for appellees.

Panel

JUSTICE STERBA delivered the judgment of the court, with opinion.

Presiding Justice Lavin and Justice Salone concurred in the judgment and opinion.

**OPINION**

¶ 1      This case arises from a dispute involving the administration of the estate of decedent, Agnes B. Parker. A group of decedent's heirs, Bernard L. Bush, Francis A. Bush, Mary Margaret Myers, Anne Marie Allison, Marjorie McCollom and Janice Bush, as executor of the estate of Patricia A. Bush (collectively, the heirs), moved pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2008)) to dismiss a counterclaim filed against the estate by respondent and counterplaintiff, Sharon McCollom (respondent). The circuit court of Cook County granted the heirs' motion to dismiss, ruling that respondent's counterclaim was untimely pursuant to section 18-12(b) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/18-12(b) (West 2008)).

¶ 2      On appeal, respondent seeks: (1) the reversal of the circuit court's order granting the heirs' motion to dismiss her counterclaim; (2) a finding that the circuit court erred as a matter of law when it ruled Code section 13-207 (735 ILCS 5/13-207 (West 2008)) prohibited respondent from filing her counterclaim after the heirs had filed and served upon her a citation for recovery of assets under section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2008)); (3) a finding as a matter of law that section 13-207 permitted the filing of respondent's claim; and (4) an order reinstating the counterclaim against the estate. For the following reasons, we affirm the decision of the circuit court.

¶ 3                                  I. BACKGROUND

¶ 4      Decedent executed her will on November 1, 1978. On December 5, 1997, decedent executed a codicil appointing respondent as executrix of the will. On January 14, 1999, decedent granted respondent power of attorney, which allowed respondent to act as decedent's agent with respect to numerous personal transactions, including, among others, real estate, financial institution and stock transactions. The power of attorney also provided that respondent "shall be entitled to reasonable compensation for services rendered."

¶ 5    Decedent died on February 24, 2005. On April 26, 2005, respondent filed a petition for probate of will and for letters testamentary. Respondent listed the approximate value of the estate at $925,000. An exhibit attached to the petition listed a total of 13 heirs and legatees to the estate, which includes the heirs involved in this appeal.

¶ 6    Decedent's will and codicil were admitted into probate by order entered June 15, 2005. The order also appointed respondent as supervised executor of the estate.

¶ 7    Immediately upon decedent's will being admitted to probate, controversy arose between the heirs and respondent with regard to the administration of the estate. Respondent and the heirs each filed petitions for issuance of citation to discover assets directed to each other, which were granted by the circuit court on June 15, 2005.

¶ 8    The rider to the citation issued to respondent requested production of the following:

"1. Any tax returns of [decedent] including all 1099s and/or other attachments, schedules or other information relative to the preparation thereof;

2. Any and all records relating to accounts of any kind at any financial institution, brokerage firm, mutual fund company, insurance company, or other such institution or company in which [decedent] had an interest in at any time as individual owner, co-owner, joint tenant, trustee, beneficiary or in any other capacity.

3. Any and all records relating to any alleged gifts made by or on behalf of [decedent] at any time to any person, organization or entity in excess of $500.00 in any given calendar year.

4. Any and all records, invoices, receipts, estimates or other document[s] relating to or evidencing the Respondent's payment of any expenses, bills, debts or other obligation of [decedent] either for her individually or for any real estate owned by [decedent] or which she had an interest in."

¶ 9    The citations issued to the heirs requested information and documents related to the following:

"(1) any and all property or assets of, or held by or on behalf of [decedent];

(2) any keys to safety deposit boxes of [decedent];

(3) any money loaned by [decedent] to you or any other person;

(4) any money expended on behalf of [decedent];

(5) any transactions, deposits, withdrawals, transfers, or any other actions, conducted on any accounts with any Bank, investment company, financial institution or any other company, including but not limited to savings accounts, checking accounts, certificates of deposit, trust accounts, stock accounts, investment accounts or any other accounts, by or on behalf of [decedent] from January 1, 1990 to and including the present in your possession and control.

(6) any evidence of money, checks, or other property given to you by [decedent] or on behalf of [decedent], whether as a gift or loan from January 1, 1990 to the present."

¶ 10   Respondent published notice to creditors of the death of decedent in the *Chicago Daily*

*Law Bulletin* on July 11, 18, and 25, 2005. The notice provided that claims against the estate may be filed on or before January 12, 2006.

¶ 11     On September 27, 2005, respondent, as supervised executor, filed the inventory of the real and personal property of decedent. The total value of the estate was listed at $971,402.

¶ 12     On February 2, 2006, respondent filed a motion for rule to show cause to be issued upon Marjorie McCollom for her failure to cooperate with the scheduling of the citation to discover assets served upon her. In an order entered on March 22, 2006, the citations issued against respondent and the heirs were continued for status to June 22, 2006. The citation for Marjorie McCollom was scheduled to be conducted on April 6, 2006. On June 22, 2006, the court entered an order discharging Marjorie McCollom from the citation filed against her.

¶ 13     On August 24, 2006, the heirs filed a petition to direct respondent under decedent's power of attorney to render an accounting. The petition alleged, *inter alia*, that "it appears that [respondent] obtained control over hundreds of thousands of dollars of the decedent's cash assets from bank accounts and from the sale of stock. However, the Inventory filed by [respondent] as the Executor of this estate includes only approximately $41,000 of cash." The heirs requested an order requiring respondent to file an accounting of her actions as agent for decedent listing all receipts, disbursements and significant actions under said agency and allowing the heirs to file objections against the accounting as may be appropriate.

¶ 14     In a September 13, 2006 response to the heirs' petition, respondent stated that she complied with the citation and testified that she produced all the documents within her care, custody and control. The response also stated that respondent, who listed herself as 74 years of age, was supposed to have two major surgeries and was the sole care provider to her 84-year-old husband, John McCollom, who was diagnosed with colon cancer, diabetes and heart disease. In addition, the response stated that respondent was not financially able to afford the costs and expenses associated with the petition's request for an accounting.

¶ 15     On September 26, 2006, the heirs replied to respondent's response, asserting that under section 2-7 of the Illinois Power of Attorney Act (755 ILCS 45/2-7 (West 2004)), respondent was required to keep a record of all receipts, disbursements and significant actions taken under the agency. The heirs alleged that respondent "cannot shirk her responsibilities to account for the substantial assets of the decedent that she controlled as agent merely because she claims to be ill and financially 'strapped,' " and that respondent's "claim of being too ill to render an accounting does not solicit any sympathy." The heirs asserted respondent subjected one of the heirs, Frank Bush, an elderly man in ill health, to a deposition on the citation respondent had issued against him. The heirs stated that respondent claimed she disposed of records and documents in November 2004 in an attempt to justify her refusal or inability to render an accounting, but produced records dating back to 1995 for the examination of one of the heirs, Marjorie McCollom. The heirs asserted that respondent was capable of producing records when it suited her interests, but failed to produce records for a proper and full accounting while she served as decedent's power of attorney.

¶ 16     Respondent filed a surreply on October 10, 2006. She stated that during the last year of decedent's life, decedent's nursing home fees exceeded $504,000. Respondent also stated that she distributed gifts to decedent's heirs and friends totaling $450,000. Respondent

rejected the argument that she was shirking her responsibilities and asserted that one or more of the heirs were trying to characterize her as a negligent or deceitful agent. Respondent requested that the court deny the heirs' petition for an accounting and moved to close the estate.

¶ 17        On November 6, 2006, the court ordered respondent to file an accounting on or before January 9, 2007. Respondent filed an accounting as former agent of decedent on January 9, 2007. The accounting included a description of the condition of decedent's home. Another document "explain[ed] the way [decedent] had [respondent] take care of her expenses," which stated:

> "She had a checking account at First National Bank of Chicago [and] also a saving[s] account. Monies from the savings account would be transfer[ed] to the checking account when necessary.

> * * *

> At this time this is the only bank I was aware of. Frank Bush had access to over $350,000 at LaSalle [B]ank which he or I never discussed [decedent's] income or worth. Only after he was deposed was the first time I knew of that account. From 1998 [through] 2002 interest from income for those years was credited back to that account at LaSalle.

> With regard to Austin Bank I contacted them, [their] records show [an] account opened in 2001 and closed in 2002 which as close as I can recall must have been a CD. They have no other records.

> With regard to Parkway Bank. [An] account was opened when some stock was called in. We opened [an] account in December of 2000 as Bank One was not paying any interest. [Decedent] agreed we needed to have that money work for her.

> As far as Marquette Bank is concerned I never asked [decedent] about these accounts, because I knew her safety deposit boxes where [*sic*] there and I knew Frank Bush and Patricia Bush had access to them. We paid the yearly fees on the boxes. In 2003 I went to the bank and closed the account (Frank Bush was not on this one) and deposited the money in her account at Parkway Bank."

¶ 18        The accounting also included a description of "security duties," stocks, expenditures, income and gifts. In addition, the accounting included a document entitled, "Hours Devoted to Conserve Estate Assets of [Decedent] During Power of Attorney (P.O.A.) Tenure." This document noted that respondent spent hundreds of hours per year devoted to the conservation of estate assets of decedent, while the heirs devoted no time to the conservation of decedent's assets.

¶ 19        On February 27, 2007, the heirs filed a response to the documents respondent submitted as her accounting as decedent's former agent under a power of attorney. The heirs asserted that the documents filed by respondent failed to meet the requirements of an accounting and that the documents were self-serving narratives devoid of any financial information to support the receipts and disbursements of decedent's funds. The heirs argued that the accounting failed to provide sufficient detail or information as to the assets received or under control of respondent. The heirs noted that none of the documents submitted by respondent

were signed. The heirs also stated that Frank Bush paid decedent's nursing home expenses and medical bills. In addition, the heirs pointed out that respondent's income listed in the documents did not include amounts received from the sale of decedent's stock, which totaled over $237,000 from 1999 to 2004. The heirs sought an order from the circuit court to: (1) strike respondent's accounting as totally inadequate; (2) direct respondent, as executor, to execute an Internal Revenue Service power of attorney form authorizing a request to obtain decedent's source of income information and tax returns from the years 1998 to the present; (3) allow the heirs to conduct discovery; and (4) "state an account" against respondent.

¶ 20 Respondent filed a reply to the heirs' response on June 11, 2007. Respondent stated that "the obvious must first be recognized and that is that all filings in this and former matters on behalf of the [heirs] have been solely done by Marjorie McCollom," and that the filings were made "without the other [heirs'] knowledge or authorization, by Marjorie McCollom in pursuit of a Vendetta against [respondent]." The reply stated that respondent is Marjorie McCollom's stepmother. Respondent noted Frank Bush's deposition testimony, wherein he stated that, in his opinion, respondent had done nothing illegal or withheld any monies or assets from the estate. Respondent also noted that she was the only person that helped decedent live her remaining years in contentment and peace, and that Marjorie McCollom rarely visited decedent. In addition, respondent submitted a supplemental accounting of additional financial information, which included handwritten bank statements. Respondent requested that the circuit court render a decision regarding distribution and close the estate in an expedited manner.

¶ 21 On January 17, 2008, respondent filed an accounting for the estate through December 31, 2007. The amount of assets on hand totaled $1,073,869.06, which included the value of decedent's real estate, personal property, interest income, common stock and cash from bank accounts. The accounting itemized disbursements from the estate totaling $80,469.55. The accounting listed the estate's current assets at $993,399.51.

¶ 22 Thereafter, on January 28, 2008, respondent filed a petition for leave to make an interim distribution of $496,699.76 to the legatees of the estate. Respondent proposed that distribution of the assets would be divided among the heirs pursuant to article V of decedent's will.

¶ 23 On February 15, 2008, the heirs filed objections to respondent's petition for leave to make interim distribution. The heirs noted that the petition sought leave for an interim distribution to various legatees, including John McCollom, respondent's husband. The heirs stated that, "[a]lthough John McCollom was not an agent under the power of attorney nor under any current obligation to account, he was involved in the management or direction of the decedent's funds while [respondent] was acting as the decedent's agents [*sic*] and, upon information gleaned from the records obtained through the citations filed herein, may have been involved in the dissipation of the decedent's assets." The heirs also claimed that John McCollom obstructed and attempted to obstruct the heirs' attempts to bring him before the court on citation proceedings. In addition, the heirs claimed the following with regard to John McCollom's involvement with decedent's finances:

"A. The bank records obtained through the citations filed by [the heirs] reveal

that numerous payments were made from the decedent's funds by [respondent] to Lexus Financial Services. [The heirs] believe John McCollom used and/or was the title owner of said car;

The bank records also reflect that significant amount [*sic*] of cash went to [respondent] and John McCollom from bank withdrawals and 'cash back' from deposits relative to the decedent's accounts;

The records also reflect credit card payments to approximately five different companies from the decedent's funds–all while the decedent was confined in a nursing home;

John McCollom and [respondent] avoided service of the citations issued against them as set forth in the Affidavit of Special Process Server filed herein ***. [Respondent] ultimately waived service of the citation only after the Court threatened to remove her as executor if she continued to obstruct service of the citation[;]

The list of personal property attached to the Inventory filed herein was prepared by John McCollom; [and]

John McCollom has also sent letters to [the heirs] in an attempt to persuade them to avoid pursuing any litigation in this matter."

¶ 24 Respondent filed an answer to the heirs' objections on March 28, 2008. Respondent asserted that the heirs' objections were based on speculation and spin. Respondent stated that John McCollom, an 86-year-old man, did not hide from service of citations and did not take advantage of decedent's money, "contrary to the unsubstantiated allegations made by people who never saw their Aunt Agnes except when she was handing out gifts or they needed money." Respondent also stated that if John McCollom is not entitled to a distribution, then none of the other heirs are entitled to distributions either. Respondent claimed that the heirs' objections were based "entirely on some twisted vendetta by legatee, Marjorie McCollom against her step-mother [respondent] and father John McCollom."

¶ 25 In addition, respondent stated that she was "one of the only friends, care giver [*sic*] and companions of [decedent] that [decedent] could rely on during the closing years of her 98 year old life, since the named objecting legatees were not around and did not participate in her welfare, companionship or social life." As to finances, respondent asserted that some of the bank records were unavailable because of the bank's accounting procedures and change of ownership of banks, in addition to a limited "look back" period for electronically maintained records. Respondent also claimed that the delay in accounting was due to her deteriorating health condition and that her attorney was diligently working to complete approximately 500 pages of information to be submitted to the circuit court. Finally, respondent asserted that in the three years since the decedent's death, no effort was made to depose either respondent or John McCollom.

¶ 26 The circuit court denied respondent's petition for leave to make an interim distribution on April 17, 2008.

¶ 27 On May 1, 2008, the circuit court granted the heirs leave to initiate discovery for an account stated. The heirs filed a motion to compel against respondent on October 9, 2008 for production of certain documents. Respondent filed her response to the motion to compel on

October 23, 2008.

¶ 28       On December 16, 2008, the heirs filed a petition for account stated against former agent under power of attorney. The heirs sought leave to file the account stated against respondent as agent *instanter*. The heirs also requested the circuit court to state said account against respondent. In addition, the heirs requested the entry of an order directing respondent to return to the estate the amount found due the estate. Finally, the heirs sought the entry of judgment against respondent in the amount due from her as security for the turnover order. The heirs attached to their petition an account stated against respondent as former agent, claiming respondent should be charged with $1,007,816.33 due and owing to the estate. The circuit court granted the heirs' petition on the same date.

¶ 29       Respondent filed a response to account stated on April 7, 2009, which provided information regarding money deposited in decedent's various bank accounts from, among other things, interest income, pension benefits, social security and dividends. Respondent also listed all the disbursements, which included nursing home expenditures and gifts to the heirs and legatees. Respondent requested that the circuit court find there is no sum due and owing from respondent to the estate.

¶ 30       On July 9, 2009, the heirs moved for judgment against respondent. The heirs asserted that respondent's response to account stated was devoid of information to verify her actions as decedent's agent. According to the heirs, respondent admitted collecting the assets of decedent, but failed to account for any disposition of the assets, including $392,448 of proceeds from the sale of Best Foods ADR stock. The heirs sought an order directing respondent to turn over to the estate an amount totaling $914,926.63.

¶ 31       In response, respondent moved to strike the heirs' motion for judgment, contending the heirs failed to indicate under which, if any, Code section or statute under the Probate Act would allow the heirs to bring their motion. Respondent argued there is no lawful basis or authority for the heirs' motion, as no citation to recover assets had been issued to date.

¶ 32       The heirs responded to respondent's motion to strike, asserting the lengthy procedural history of this case and the circuit court's discretion to order an accounting of the estate. The heirs argued that respondent failed to render an appropriate accounting, even though she was ordered to do so more than two years ago. The heirs contended that respondent should be held accountable for the assets over which she admittedly assumed control and that a judgment should be entered in favor of the heirs and against respondent in the amount due and owing to the estate.

¶ 33       Respondent replied that the heirs' response was merely an attempt to evade the issues and to divert the circuit court's attention away from the fatal jurisdictional deficiency in the heirs' chosen manner of proceeding. Respondent asserted that the heirs' course of action was outside of the recognized and allowable procedures that govern the recovery of money or other property under the Code or Probate Act.

¶ 34       On September 14, 2009, the circuit court denied respondent's motion to strike and ordered respondent to file an accounting or a response to the heirs' motion for judgment.

¶ 35       On November 19, 2009, respondent filed an interim record of receipts, disbursements and significant actions as agent under power of attorney of property of decedent. The heirs filed

objections to the interim record on December 22, 2009. The heirs claimed that the interim record was difficult to review because respondent failed to list what assets she initially received or took control of once she became decedent's agent. The heirs asserted that the descriptions of the disbursements identified by respondent were vague and failed to establish that they were for the benefit of decedent. The heirs argued that respondent used substantial funds of decedent for her own benefit or for other unauthorized uses. For example, the heirs noted a disbursement on May 30, 2003 for "restaurant expenses," in the amount of $5,020. The heirs requested that the circuit court: (1) reject respondent's interim account as stated; (2) require respondent to produce receipts, bills or other satisfactory proof to establish that any disbursements made by respondent were made for the benefit of decedent; and (3) assess against respondent an amount due and owing to the estate.

¶ 36    Respondent filed a response to the heirs' objections, asserting she complied with her statutory obligations under section 2-7. Respondent argued that, as power of attorney, she did not have legal custody, control or possession of decedent's assets and, as such, her interim report was not deficient because she was not required to file any kind of report or accounting. Respondent claimed that she was neither empowered to, nor did she receive or control the assets of decedent. Respondent asserted decedent's assets remained in her own name and that decedent was in control of her own assets until her death. Respondent contended that the heirs presented no evidence that any checks subject to the heirs' objections were made without the knowledge and consent of decedent.

¶ 37    On March 29, 2010, respondent moved under Code section 2-619(a) (735 ILCS 5/2-619(a) (West 2008)) to dismiss the proceedings for an accounting due to lack of subject matter jurisdiction. Respondent argued the circuit court lacked jurisdiction because the heirs failed to file a petition for a recovery citation pursuant to section 16-1 of the Probate Act. In addition, respondent moved under section 2-619(a)(5) to dismiss the proceedings for an accounting as barred pursuant to the statute of limitations under Code section 2-1305 (735 ILCS 5/2-1305 (West 2008)). Respondent asserted that all the transactions at issue occurred more than five years prior to the heirs' filing of the petition for accounting.

¶ 38    On April 8, 2010, the circuit court denied respondent's motion to dismiss. The court granted the heirs leave to file an amended citation for recovery of assets on April 13, 2010.[1]

¶ 39    The heirs filed their amended citation for recovery of assets from respondent and John McCollom on May 10, 2010. In count I of the amended citation, the heirs claimed respondent closed out various accounts at financial institutions which were in the name of decedent and transferred the funds to new accounts over which respondent handled all the transactions. The heirs asserted that respondent caused the sale of shares of stock in the name of decedent and otherwise assumed control over decedent's assets and the income and proceeds therefrom. The heirs also claimed respondent used decedent's funds to pay for personal

---

[1]It should be noted that the record contains no initial filing of a citation for recovery of assets by the heirs. It appears that the circuit court granted the heirs leave to file an "amended citation for recovery" in lieu of the motion for judgment the heirs previously filed and in accordance with section 16-1 of the Probate Act.

expenses including a Lexus automobile, restaurant charges, credit card charges and vacations. In addition, the heirs argued respondent was grossly negligent by failing to monitor the proceeds from the sale/liquidation of decedent's assets, including the sale of Best Foods common stock totaling $392,000. The heirs requested the circuit court enter an order: (1) for respondent to render an accounting of her actions as agent for decedent; (2) directing respondent to turn over to the estate the amount of assets she misappropriated and negligently handled on behalf of decedent; and (3) for judgment against respondent in the amount of and as security for the turnover order. The heirs alleged similar claims in the second count directed against John McCollom.

¶ 40    On June 7, 2010, respondent filed an answer to the heirs' amended citation for recovery and a counterclaim against the estate. Respondent's counterclaim asserted she was owed compensation for services rendered to decedent during her lifetime. Respondent's counterclaim consisted of one count each for breach of express contract and *quantum meruit* in an amount totaling $225,500 plus interest. Respondent attached to her counterclaim an exhibit listing the personal services she performed for decedent from 1997 until decedent's death.

¶ 41    The heirs moved under section 2-619(a)(5) to dismiss the respondent's counterclaim against the estate on June 29, 2010. The heirs noted decedent's date of death occurred on February 24, 2005 and that respondent's counterclaim was filed on June 7, 2010, beyond the two-year period to file a claim against an estate as provided by section 18-12(b) of the Probate Act.

¶ 42    Respondent argued in response that, because the heirs filed a citation to recover assets beyond the two-year claim filing period under section 18-12(b) of the Probate Act, she was entitled to file a counterclaim for services rendered. Respondent asserted *In re Estate of Rice*, 154 Ill. App. 3d 591 (1987), which held section 13-207 applied to a counterclaim filed two years after the death of the decedent, was applicable in this case.

¶ 43    The heirs replied that the amended citation for recovery of assets was not a new action filed against respondent, but a continuation of the action for accounting filed four years earlier. The heirs asserted that they were required to file an account stated against respondent as a direct result of her delays in rendering the court-ordered accounting. The heirs contended they did nothing to prevent respondent from filing her alleged claim against the estate. In addition, the heirs argued that the two-year filing period for claims against an estate under section 18-12(b) of the Probate Act is a grant of jurisdiction and not a general statute of limitations and, thus, section 13-207 did not apply.

¶ 44    On September 8, 2010, the circuit court entered an order dismissing respondent's counterclaim. The court found that section 18-12(b) is jurisdictional and not a statute of limitations and, therefore, section 13-207 was inapplicable. Respondent timely appeals.

¶ 45                    II. ANALYSIS

¶ 46    Initially, we note that the brief of appellant was submitted in violation of Supreme Court Rules 341(h)(6) (Ill. S. Ct. R. 341(h)(6) (eff. Sept. 1, 2006)) and 342 (Ill. S. Ct. R. 342 (eff. Jan. 1, 2005)). The brief includes a one-page statement of facts devoid of information

necessary to an understanding of a case in probate for six years and with sparse reference to the pages of the record on appeal. The appendix to the brief fails to include a complete table of contents, with page references, to the record on appeal. Instead, the table of contents is limited to volume 6 of the record on appeal and the brief expressly states that the table of contents "has been limited to Volume 6 as Volumes 1 through 5 do not contain any material relevant to the issues presented for review."

¶ 47    The First District's docket is full and noncompliance with Rules 341 and 342 does not help us resolve appeals expeditiously. Reviewing courts will not search the record for purposes of finding error in order to reverse the judgment when an appellant has made no good-faith effort to comply with the supreme court rules governing the contents of briefs. See *First National Bank in De Kalb v. City of Aurora*, 41 Ill. App. 3d 326, 328 (1976), *rev'd on other grounds*, 71 Ill. 2d 1 (1978). Furthermore, as this appeal requires *de novo* review, the *entire* appellate record is relevant here, and we reject appellant's attempt to declare what material is relevant for review. As the response brief of appellees contains a more complete statement of facts and table of contents to the record for volumes 1 through 5, we review this case for purposes of the effective administration of justice.

¶ 48    On appeal, respondent concedes that section 18-12(b) of the Probate Act applies here, but asserts that the heirs' late filing of their amended citation for recovery of assets served to revive respondent's counterclaim against the estate pursuant to Code section 13-207. Respondent argues that the circuit court erred by failing to apply section 13-207 to respondent's counterclaim. In addition, respondent contends that the court erred by relying upon *In re Marriage of Epsteen*, 339 Ill. App. 3d 586 (2003), instead of *Estate of Rice* when making its determination.

¶ 49    The heirs respond that the circuit court properly dismissed respondent's counterclaim. The heirs assert that the plain language of section 18-12(b) governs the interpretation and application of the statute, which bars claims from being filed against the estate beyond two years after the death of decedent. The heirs argue that the filing of a claim within the statutory period is mandatory. The heirs also contend that the court properly recognized section 18-12(b) as a grant of jurisdiction rather than a statute of limitations and, as such, the court had no jurisdiction to consider respondent's counterclaim. Finally, the heirs assert that the court's finding facilitates the Probate Act's goal of early settlements of estates.

¶ 50                                      A. Standard of Review

¶ 51    We review *de novo* the dismissal of a claim pursuant to Code section 2-619(a)(5). *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 440 (2005). The interpretation of statutes likewise is reviewed *de novo. Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008).

¶ 52              B. Section 18-12(b) of the Probate Act Bars Respondent's Counterclaim

¶ 53    Respondent claims that the heirs' filing of their citation to recover assets beyond the two-year claims filing period set forth in section 18-12(b) necessitated the filing of her counterclaim against the estate. She seeks application of section 13-207 to save her counterclaim that would otherwise be barred by section 18-12(b).

¶ 54    When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). All other rules of statutory construction are subordinate. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 6 (2004). To determine legislative intent, we first examine the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). The statutory language must be given its plain, ordinary and popularly understood meaning. *Id*. Clear and unambiguous statutory language must be given effect as written without resort to further aids of statutory construction. *Id*. When two statutes are allegedly in conflict, a court has the duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001).

¶ 55    Section 13-207 provides as follows:

> "A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13-207 (West 2008).

¶ 56    Section 18-12 of the Probate Act defines the period of time for claims against an estate to be filed:

> "(a) Every claim against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, is barred as to all of the decedent's estate if:
>
>      (1) Notice is given to the claimant as provided in Section 18-3 and the claimant does not file a claim with the representative or the court on or before the date stated in the notice; or
>
>      (2) Notice of disallowance is given to the claimant as provided in Section 18-11 and the claimant does not file a claim with the court on or before the date stated in the notice; or
>
>      (3) The claimant or the claimant's address is not known to or reasonably ascertainable by the representative and the claimant does not file a claim with the representative or the court on or before the date stated in the published notice as provided in Section 18-3.
>
>      (b) Unless sooner barred under subsection (a) of this Section, all claims which could have been barred under this section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent." 755 ILCS 5/18-12 (West 2008).

¶ 57    Illinois courts have long held that the time period to file a claim against an estate under section 18-12(b) and its predecessor statutes "is a grant of jurisdiction, not a general statute of limitations." *In re Marriage of Epsteen*, 339 Ill. App. 3d at 596. See also *Ruffing v. Glissendorf*, 41 Ill. 2d 412, 419 (1968); *In re Estate of Bird*, 410 Ill. 390, 397 (1951); *Waughop v. Bartlett*, 165 Ill. 124, 128-29 (1896), *rev'd on other grounds*, *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526 (2010); *In re Estate of Kremer*, 190 Ill.

-12-

App. 3d 650, 657 (1989); *In re Estate of Ito*, 50 Ill. App. 3d 817, 820 (1977); *In re Estate of Baker*, 48 Ill. App. 2d 442, 444 (1964). Indeed, section 18-12(b) specifically was adopted to facilitate the early settlement of estates. *In re Marriage of Epsteen*, 339 Ill. App. 3d at 596.

¶ 58    Moreover, "[t]he filing of a claim within the statutory period is mandatory, and 'no exception to the filing period may be engrafted by judicial decision.' " *Id.* (quoting *In re Estate of Hoheiser*, 97 Ill. App. 3d 1077, 1081 (1981)). Once the statutory time period expires, the court has no power or jurisdiction to adjudicate a claim against the estate. *In re Marriage of Epsteen*, 339 Ill. App. 3d at 596.

¶ 59    Respondent's reliance on *Estate of Rice* is misplaced, as that case is distinguishable from the instant case. In *Estate of Rice*, the decedent was a member in a business partnership. Nearly a year after the estate was opened, the executor petitioned for a citation to discover assets against the partnership for compensation owed to the decedent. The partnership responded by furnishing the estate with the requested documents. A citation to recover assets was issued against the partnership more than two years after the decedent's death. In response, the partnership filed an answer and counterclaim, alleging that the decedent devoted virtually no time to the business during the last three years of his life and that his conduct constituted a breach of the partnership agreement which resulted in overcompensation and the unjust enrichment of decedent. The estate moved to dismiss the counterclaim on the basis that it was not filed within six months after the issuance of letters of office and, therefore, was barred by section 18-12(b) (Ill. Rev. Stat. 1985, ch. 110½, ¶ 18-12). The circuit court granted the estate's motion to dismiss.

¶ 60    On appeal, the reviewing court addressed whether a decedent can assert a claim against a living person or an existing entity two years after death, and then attempt to bar the counterclaim. The court specifically inquired, "[w]here the assertion of a claim by a decedent may invite a defense or counterclaim, is it the duty of the executor to withhold the claim until the passage of [the effective statutory time period] and then invoke section 18-12 as a bar? We think not." *Estate of Rice*, 154 Ill. App. 3d at 592. The court noted that the Code applies to probate proceedings and held that section 13-207 saved the partnership's counterclaim. The court specifically stated that section 13-207 "does not contain a provision which closes the door if the initiating party's claim is later dismissed." (Internal quotation marks omitted.) (Emphasis omitted.) *Id.* at 593. In its analysis, the court stated:

    "Upholding the trial court's order would encourage executors or administrators to delay the assertion of claims against third parties because they may result in set-offs or counterclaims against the estate. In addition, executors or administrators would follow this strategy to avoid a charge of malfeasance and to avoid the possibility of having to defend against an action for removal by dissatisfied heirs or legatees." *Id.* at 593-94.

¶ 61    First, the instant case does not present a scenario where the estate waited until the end of the two-year period to assert a claim against a third party and then invoke section 18-12(b) as a bar. In contrast to *Estate of Rice*, this case involves a lengthy citation period caused by respondent's failure to comply with the circuit court's orders to render a proper accounting of the estate's assets.

-13-

¶ 62 Section 16-1 of the Probate Act outlines citation proceedings that provide a simple, comprehensive and summary method of discovering and recovering estate assets found to be in the possession and control of others. 755 ILCS 5/16-1 (West 2008); see also *Keshner v. Keshner*, 376 Ill. 354, 359 (1941). The Probate Act confers upon the court the power to determine all questions of title, claims of adverse title and the right of property. *Id.* As the citation procedures "are summary and informal in nature, the courts are liberal in the procedures they permit to be followed under these sections." *In re Estate of Chernyk*, 138 Ill. App. 3d 233, 236 (1985).

¶ 63 In *Estate of Chernyk*, the decedent's spouse, Esther, filed a petition for citation to discover assets against the defendants within six months of the admission of the decedent's will to probate. The then-applicable statutes to set aside or contest the validity of a revocable *inter vivos* trust agreement to which a legacy is provided by the settlor's will required commencement within six months after the admission of the will to probate. See Ill. Rev. Stat. 1983, ch. 110, ¶ 13-223; Ill. Rev. Stat. 1983, ch. 110½, ¶ 8-1(a). After a discovery citation hearing was held more than a year later, Esther was given leave to amend her citation to discover to a citation to recover assets. Esther filed an amended petition for citation to discover assets against the defendants over 22 months later. The defendants moved to dismiss Esther's amended petition on the basis that it was time-barred. The circuit court dismissed Esther's amended petition.

¶ 64 The *Estate of Chernyk* court held that Esther's amended petition for citation to recover assets related back to the timely filing of her original petition for citation to discover assets. *In re Estate of Chernyk*, 138 Ill. App. 3d at 236. The court specifically stated:

"Although the original petition is a citation to discover estate assets, we believe that the original petition sufficiently calls into question the validity of the trust agreement so as to afford the defendants adequate opportunity to investigate the factors upon which their liability may be based without being prejudiced by the filing of the amended petition. Additionally, the fact that leave to amend the original petition was asked for immediately following the citation proceeding further indicates that Esther was diligent in presenting her challenge of the trust and was not attempting to circumvent the statute of limitations. Accordingly, we find that the amended petition relates back to the time of the filing of the original petition and that the amended petition was therefore not time-barred by the limitation provision of section 13-223." *Id.*

¶ 65 Similar to *Estate of Chernyk*, the heirs timely filed their petition for citation to discover assets against respondent within three months of decedent's death. Since the issuance of the citation to discover assets against respondent, the record is replete with the heirs' attempts to direct respondent under decedent's power of attorney to render an accounting of respondent's actions while she served as decedent's agent. The heirs also objected to the accountings submitted by respondent, which were woefully inadequate and sometimes handwritten. Section 16-1 of the Probate Act provides that the circuit court "may enter such orders and judgment as the case requires" (755 ILCS 5/16-1(d) (West 2008)) and, in light of the numerous delays caused by respondent, the court granted the heirs leave to file an amended petition for citation to recover assets. The heirs filed their amended petition within

-14-

a month of the court's granting leave.

¶ 66     We find that the heirs' amended petition for citation to recover assets relates back to their original petition for citation to discover assets against respondent. *Estate of Chernyk*, 138 Ill. App. 3d at 236. If we were to hold otherwise, it would allow interested persons to withhold information and delay the probate proceedings to take advantage of section 18-12(b) and would hinder the Probate Act's goal of early settlement of estates. In short, the respondent's argument that the heirs' late filing of their amended petition for citation to recover assets necessitated her filing of the counterclaim is inapposite to the disposition of this case. The proper focus of this case is whether respondent timely filed what, in essence, is a claim against the estate for compensation for alleged personal services that she rendered to decedent. We think not.

¶ 67     Second, this case is distinguishable from *Estate of Rice* in that it does not involve the delay of assertion of claims against third parties because they may result in set-offs or counterclaims against the estate. Indeed, this case presents quite a different, but common probate scenario, namely, an attempt to obtain the return of property of the estate alleged to be wrongfully concealed or controlled by another. *In re Estate of Kolbinger*, 175 Ill. App. 3d 315, 322 (1988).

¶ 68     Third, and, notably, respondent also serves as supervised executor of the estate. In that capacity, she was responsible for and did, in fact, publish notice to creditors that claims against the estate may be filed on or before January 12, 2006. In other words, respondent was well aware of the statutory deadline to file a claim against the estate as provided under section 18-12(a) of the Probate Act (755 ILCS 5/18-12(a) (West 2008)) and it is clearly disingenuous for respondent to claim otherwise.

¶ 69     In sum, as the time period to file a claim against an estate under section 18-12(b) is a grant of jurisdiction and not a statute of limitations, and respondent filed her counterclaim against the estate well after the two-year period, her counterclaim was properly dismissed by the circuit court. *In re Marriage of Epsteen*, 339 Ill. App. 3d at 596. Code section 13-207 is inapplicable in this case.

¶ 70                     III. CONCLUSION

¶ 71     For the foregoing reasons, we affirm the decision of the circuit court to grant the heirs' section 2-619(a)(5) motion to dismiss the respondent's counterclaim as untimely pursuant to section 18-12(b) of the Probate Act.

¶ 72     Affirmed.