*In re* MARRIAGE OF MARILYN D. EPSTEEN, Petitioner, and MARY B. EPSTEEN, as Ex'x of the Estate of Peter Epsteen, Respondent.—MARILYN D. EPSTEEN, n/k/a Marilyn D. Zalud, Guardian of the Estate of Jill Ann Epsteen, a Disabled Person, Plaintiff-Appellant and Cross-Appellee, v. MARY B. EPSTEEN, as Ex'x of the Estate of Peter Epsteen, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)   Nos. 1—01—2695, 1—02—0925 cons.

Opinion filed May 28, 2003.

Stephen M. Komie and Elizabeth Butler, both of Komie & Associates, of Chicago, for appellant.

Paul L. Feinstein, of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

The plaintiff, as guardian of her disabled adult daughter, is seeking financial support from her ex-husband's estate. Two judges in the trial court dismissed four counts of her complaint. Three were dismissed because they were not timely filed pursuant to the nonclaim statute of the Probate Act of 1975 (the Probate Act) (755 ILCS 5/1—1 *et seq.* (West 2000)) and one was dismissed because another case was pending in California for the same cause. The plaintiff appeals the trial court's dismissal of her claims. We affirm the dismissals.

FACTS

Marilyn D. Epsteen, now known as Marilyn D. Zalud (Marilyn), was divorced from Peter Epsteen (Peter) on August 14, 1973, in Cook County, Illinois. Jill Ann Epsteen (Jill) was born to Marilyn and Peter on July 16, 1961. Jill is mentally disabled with an IQ of 58. She was adjudicated a disabled person and made a ward of the court by the circuit court of Cook County on July 8, 1991. Marilyn was appointed the plenary guardian of Jill's estate and person.

According to a supplemental judgment for divorce entered December 21, 1973, Peter was required to pay $300 per month in child support for Jill. The judgment also required that Peter:

> "i) *** pay and defray in their entirety the costs and expenses of providing for JILL ANN EPSTEEN, minor child of the parties hereto, subject to further order of this court or agreement of the parties hereon, such special therapy and education as may from time to time be requisite for the cure, treatment, alleviation or palliation of the condition of mild mental retardation and perceptual learning difficulties which the said JILL ANN EPSTEIN [*sic*] experiences regardless of the attainment by her of the age of majority. It is further ordered that the parties hereto join in the making of an application to competent authority of the State of Illinois, or any political subdivision thereof, for a grant or grants of funds in aid of the treatment or special education of the said JILL ANN EPSTEEN, and that to the extent that any such funds may be derived, the same shall be delivered to, and shall be and remain the property of [Peter]."

Peter was required to pay the premiums on two life insurance policies. One policy was for $100,000, and the other was for $35,000. Marilyn was the primary beneficiary of both policies. The judgment forbade Marilyn or Peter from doing anything that would effectuate any diminution in the face value of the life insurance policies.

According to both parties, after the divorce Peter moved to California and resided there until his death.

On July 15, 1992, Marilyn filed a petition asking for "the award of a sum of money from the property of Peter Epsteen for the support of Jill Ann Epsteen." In an agreed order dated July 30, 1993, the court, among other things, ordered Peter to pay $725 per month to Marilyn for Jill's support. Marilyn's July 15 petition was continued and set for status. In the same paragraph, the order stated: "[t]he parties stipulate and agree that the estate plan shall take effect upon Peter's death and not during his lifetime."

Peter died on December 8, 1997, in Palm Springs, California, leaving an estate with an estimated value of $650,000. Mary B. Epsteen (Mary), Peter's wife, was appointed executrix of his estate. His will provided: "From a prior marriage, I have four (4) children now living, namely DEBRA PETTIT, JAMES EPSTEEN, JILL ANN EPSTEEN, and CINDY EPSTEEN and one (1) deceased child, namely LORI ANN EPSTEEN. *** I have intentionally and with full knowledge omitted to provide for my children from my prior marriage and all other persons not mentioned in this instrument."

## California Proceedings

On March 10, 1998, Mary filed a petition for probate of will and for letters testamentary with the superior court of California, County of Riverside. Peter's will was admitted to probate on April 13, 1998. On August 7, 1998, Marilyn, as guardian of Jill's person and estate, filed a creditor's claim for $11 million against Peter's estate. In an attachment, she contended the cost of maintaining Jill was approximately $80,000 per year, and Jill's life expectancy was 78 years, of which 41 years were remaining. Jill lived in a community living facility in Illinois and was a public charge. On October 5, 1998, Mary filed a rejection of the creditor's claim.

On October 19, 1998, in Riverside County, California, Marilyn filed a petition for family allowance, seeking enforcement of the $725 monthly support payments, which had ceased after Peter's death in December 1997. Mary filed an objection to the petition for family allowance, contending Jill had received $550 per month in social security benefits, which should be applied to offset any obligation the estate might have. The objection also stated Marilyn had received life insur-

ance proceeds in excess of $100,000, from a life insurance policy maintained by Peter for Jill's benefit, the proceeds to be used for Jill's support and maintenance.

On December 24, 1998, in Riverside County, California, Marilyn filed a complaint for support of disabled person and for quasi-specific performance and imposition of constructive trust, requesting an award equal to the cost of supporting and maintaining Jill for the remainder of her life, estimated at $80,000 per year and in excess of $10 million over Jill's lifetime. The complaint set out three causes of action: (1) that the defendants—Mary, as executrix of Peter's estate and trustee of the Epsteen Family Trust, and David Roth, as co-trustee—were liable for the support of Jill as a disabled adult child; (2) that Peter's estate was in violation of the divorce judgment and the agreed order, by failing to pay child support, failing to pay the premiums of the two life insurance policies, and failing to provide for Jill's support in the estate plan; and (3) that a constructive trust be imposed upon the property of the probate estate and the Epsteen Family Trust in order to provide for Jill's support. The complaint also sought an award of miscellaneous costs incurred in caring for Jill prior to Peter's death, in the amount of $13,243.24. The awards were to come from Peter's estate, and then from the Epsteen Family Trust.

Mary filed a motion for summary judgment, contending the State of Illinois had exclusive jurisdiction over the court orders arising from the dissolution of marriage. She contended the California court had no power to change or modify the Illinois order; at best, the court could enforce the existing order of $725 per month in incidental support. According to Mary, this amount had been paid monthly since Peter's death.

On May 17, 2000, the superior court of California, County of Riverside, entered an order staying the action to determine whether a suit had been filed by Marilyn in Illinois for Jill's financial support. Marilyn filed the instant complaint in Illinois on April 10, 2000. While the case was pending in Illinois, the California court lifted the stay and granted Mary's motion for summary judgment. Marilyn appealed. The Court of Appeal of the State of California, Fourth Appellate District, issued an unpublished opinion on December 23, 2002. The court reversed summary judgment on counts I and II of the complaint but affirmed summary judgment on count III, the claim for quasi-specific performance. Marilyn was granted costs for the appeal.

### Illinois Proceedings

On April 10, 2000, Marilyn filed her complaint to enforce supplemental judgment of divorce of December 21, 1973, in the circuit

court of Cook County, domestic relations division. The relevant counts for purposes of this appeal are counts III through VI. Count III sought restitution against the estate for Peter's failure to pay premiums on the two life insurance policies, causing one policy to be terminated and the other diminished in value. Count IV sought modification of the $725 monthly support payments for Jill, pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 (West 2000)), based on the discovery of decedent's large estate. Count V sought financial support for Jill in the amount of expenses paid by the State of Illinois, pursuant to section 513 of the Act. Count VI sought enforcement of an estate plan which was to have included provisions for Jill's support.

Mary brought a section 2—619 motion to dismiss counts IV, V, and VI, contending: (1) the complaint was time-barred, pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act and section 18—12 of the Probate Act, requiring a claim to be brought within two years of the decedent's death (750 ILCS 5/510 (West 2000); 755 ILCS 5/18—12 (West 2000)), and (2) the complaint was an improper splitting of an action between California and Illinois, based on section 2—619(a)(3) of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(3) (West 2000)) (another action pending between the same parties for the same cause).

In a January 5, 2001, order, Judge Edmund Ponce de Leon granted the motions to dismiss and for judgment on the pleadings as to counts IV, V, and VI. The court held counts IV and V were not commenced within the time limited by law (735 ILCS 5/2—619(a)(5) (West 2000)), and count VI was a split action, based on section 2—619(a)(3) (735 ILCS 5/2—619(a)(3) (West 2000)). Marilyn filed an amended motion to reconsider on February 5, 2001. The motion was denied. On April 2, 2002, Judge Nancy Katz granted Mary's motion to dismiss count III of the complaint, finding it was time-barred under section 510 of the Illinois Marriage and Dissolution of Marriage Act. Judge Katz agreed with Judge Ponce de Leon's ruling on the timeliness of this action. Whether she believed she was bound by it is not clear from the record. Her order of dismissal is based on section 2—619(a)(5). Marilyn has appealed both judges' orders, which were consolidated on appeal.

## Cross-Appeal: Motion for Sanctions

After Marilyn filed her motion to reconsider, Mary brought a motion for Supreme Court Rule 137 sanctions. 155 Ill. 2d R. 137. Mary does not provide a citation to the record for this motion, and we are unable to find a copy of the motion in the record. On May 4, 2001, Judge Ponce de Leon entered an order denying Marilyn's motion for

reconsideration and denying Mary's motion for sanctions. Marilyn's notice of appeal was filed May 31, 2001. Mary filed a notice of cross-appeal on June 8, 2001, appealing the denial of sanctions.[1]

## DECISION

### I. Section 2—619(a)(3)

Judge Ponce de Leon dismissed count VI of Marilyn's complaint because, pursuant to section 2—619(a)(3) of the Code of Civil Procedure, there was another action pending between the same parties for the same cause. 735 ILCS 5/2—619(a)(3) (West 2000). In his memorandum opinion, Judge Ponce de Leon held: "MARILYN, as guardian of the estate of JILL, has previously filed claim against the estate of PETER in the State of California, on October 15, 1998 and December 24, 1998, requesting similar relief, which would have been the proper place to bring such a claim, since it is in the State of California that PETER'S estate action has been opened. It is there that a claim must be filed. MARILYN is attempting to split the cause of action, which is piecemeal and duplicative. The purpose of [section] 2—619(a)(3) is to further judicial economy by avoiding duplicative litigation. [Citation.] Thus, enforcement of a claim, if any exist, is for the California Courts to determine, and not Illinois, and Count VI should be dismissed."

Count VI contended that in the agreed order entered July 30, 1993, Peter represented to the court that he would provide support for Jill by way of an estate plan, and he failed to make such an estate plan. The relevant paragraph in the agreed order states: "5. That the 'Petition for Establishment for the Award of a Sum of Money from the Property of Peter Epsteen for the Support of Jill Ann Epsteen' filed by Marilyn on the 15th day of July, 1992 is continued and set for STATUS on the ___ day of July, 1993 at 9:30 p.m. in Courtroom 703 at 1340 S. Michigan Avenue, Chicago, Illinois without further notice to the parties. The parties stipulate and agree that the estate plan shall take effect upon Peter's death and not during his lifetime." Count VI prayed for an order of the court enforcing an estate plan against Peter's estate to provide for the care, maintenance, and welfare of Jill, for her remaining life expectancy.

In the California complaint, the second cause of action contended: "the provisions of Peter Epsteen's Last Will and The Epsteen Family Trust were not amended thereafter to provide for Jill's support and maintenance, that Jill is not a beneficiary under the Epsteen Family

---

[1]Mary raises issues concerning Marilyn's notice of appeal and her authority to pursue an appeal. We find no merit to these contentions.

Trust or any other entity established by Peter Epsteen and, accordingly, that Peter Epsteen's estate plan did not provide for the support of Jill, contrary to the Agreed Order in the Divorce Proceeding and the representations made by and on Peter Epsteen's behalf in connection therewith." The complaint contended that the estate was liable for the support and maintenance of Jill, or if the estate was inadequate, the defendants as trustees were liable. The third cause of action in California alleged the same basis and asked for the remedies of quasi-specific performance and the imposition of a constructive trust on the assets of the estate for Jill's support and maintenance.

■ Section 2—619(a)(3) of the Code of Civil Procedure allows a defendant to move for a dismissal or a stay when there is "another action pending between the same parties for the same cause." 735 ILCS 5/2—619(a)(3) (West 2000). The purpose of the section is to avoid duplicative litigation. However, a trial court is not required to dismiss a proceeding under section 2—619(a)(3) even when the "same cause" and "same parties" requirements are met. *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 243, 670 N.E.2d 664 (1996). Rather, the decision to grant or deny the motion is discretionary with the trial court. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447, 493 N.E.2d 1045 (1986). We review the trial court's decision by applying an abuse of discretion standard. *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 789, 659 N.E.2d 89 (1995).

Factors a court should consider in deciding whether to dismiss a case under section 2—619(a)(3) include: comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum. *Kellerman*, 112 Ill. 2d at 447-48. The court also must weigh the prejudice to the nonmovant if the motion is granted against the policy of avoiding duplicative litigation. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 785-86, 699 N.E.2d 1095 (1998).

■ The section refers to the "same cause," not the "same cause of action." Actions are "for the same cause" when "relief is requested on substantially the same set of facts." *Skolnick v. Martin*, 32 Ill. 2d 55, 57, 203 N.E.2d 428 (1964). The "same parties" requirement is met where the litigants' interests are sufficiently similar, even though the litigants differ in name or number. *Doutt*, 276 Ill. App. 3d at 788.

■ We find the trial court did not abuse its discretion in dismissing count VI under section 2—619(a)(3). The parties are not identical but are sufficiently similar to meet the "same parties" requirement. The Illinois proceeding names as additional defendants National Life Insurance Company, a/k/a National Life of Vermont, Lori Ann Epsteen,

Cynthia Marie Epsteen, Debra Ann Epsteen, and James Alvin Epsteen. The litigants' interests are similar to those in the California lawsuit; in both suits, Marilyn contends that Peter's estate plan failed to provide for Jill's support and maintenance, and she seeks financial relief from the estate and the family trusts. The "same cause" requirement is similarly satisfied, as the two suits arise from the same set of facts and issues.

It appears that the trial court applied the proper analysis in balancing the policy of avoiding duplicative litigation against the interests of the plaintiff. California has a greater interest in litigation over an interest in Peter's estate since that is where the estate is located and where Epsteen's will was admitted to probate.

Marilyn does not respond to the contention that the lawsuits in Illinois and California involve the same parties and the same cause. Rather, she contends the dismissal of count VI as a split action improperly rewards legal maneuvering by the defendants. According to Marilyn, she was forced to pursue her action against the estate in California because the Illinois courts lacked subject matter jurisdiction over the estate.

Most of Marilyn's claims live on in the California litigation. See *Zalud v. Epsteen*, No. E031075 (Cal. Ct. App. December 23, 2002). In the unreported California appellate opinion, the court first held the trial court did not err in granting Mary's motion for summary judgment as to the claim for quasi-specific performance. Marilyn had asked for quasi-specific performance of Peter's agreement in the 1993 agreed order to provide for Jill's future support as part of his estate plan. The court held there was no such agreement created by the language of the agreed order. Second, the court reversed summary judgment as to the claim for incidental support of $725 per month. That portion of the agreed order was not, as the trial court held, already being enforced by the probate court order for family allowance. The instant action sought permanent child support for the rest of Jill's expected life, not temporary family allowance. Finally, the court reversed summary judgment as to the claim for "primary support," the special therapy and education required to treat Jill's mental retardation and learning disabilities. The court held this claim was not seeking to "modify" the existing support order, but only to estimate the cost of primary support for the remainder of Jill's life and enforce the Illinois court's 1973 order.

Whether one cause of action was disposed of through summary judgment is irrelevant to our section 2—619(a)(3) analysis. Looking at the complaints themselves, it is clear that they involve the same parties and the same cause.

## II. Section 2—619(a)(5)

Judge Ponce de Leon dismissed counts IV and V, and Judge Katz dismissed count III, as time-barred under section 2—619(a)(5). Count IV was brought pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act, and count V was brought pursuant to section 513. Judge Katz found that section 510 applied to count III because it was in the nature of enforcement. We examine these dismissals by applying a *de novo* standard of review. *Carver v. Nall*, 186 Ill. 2d 554, 557, 714 N.E.2d 486 (1999).

■ Section 510 provides:

"(d) *** When a parent obligated to pay support or educational expenses, or both, dies, the amount of support or educational expenses, or both, may be enforced, modified, revoked or commuted to a lump sum payment, as equity may require, and that determination may be provided for at the time of the dissolution of the marriage or thereafter.

(e) The right to petition for support or educational expenses, or both, under Sections 505 and 513 is not extinguished by the death of a parent. Upon a petition filed before or after a parent's death, the court may award sums of money out of the decedent's estate for the child's support or educational expenses, or both, as equity may require. The time within which a claim may be filed against the estate of a decedent under Sections 505 and 513 and subsection (d) and this subsection shall be governed by the provisions of the Probate Act of 1975, as a barrable, noncontingent claim." 750 ILCS 5/510(d),(e) (West 2000).

■ Section 513 provides:

"(a) The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of the child or children of the parties who have attained majority in the following instances:

(1) When the child is mentally or physically disabled and not otherwise emancipated, an application for support may be made before or after the child has attained majority." 750 ILCS 5/513(a) (West 2000).

■ The parties agree that section 18—12 of the Probate Act defines the limitations period for purposes of sections 510 and 513 of the Illinois Marriage and Dissolution of Marriage Act. Section 18—12 states:

"(a) Every claim against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, is barred as to all of the decedent's estate if: (1) Notice is given to the claimant as provided in Section 18—3 and the claimant does not file a claim with the representative or the court on or before the date stated in the notice; or

(2) Notice of disallowance is given to the claimant as provided in Section 18—11 and the claimant does not file a claim with the court on or before the date stated in the notice; or

(3) The claimant or the claimant's address is not known to or reasonably ascertainable by the representative and the claimant does not file a claim with the representative or the court on or before the date stated in the published notice as provided in Section 18—3.

(b) Unless sooner barred under subsection (a) of this Section, all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent." 755 ILCS 5/18—12(a), (b) (West 2000).

■ Here, Peter died on December 8, 1997, and Marilyn filed her petition on April 10, 2000, more than two years after the date of death. Section 18—12 was adopted to facilitate the early settlement of estates. *In re Estate of Beider*, 268 Ill. App. 3d 1094, 1096, 645 N.E.2d 553 (1994). The filing of a claim within the statutory period is mandatory, and "no exception to the filing period may be engrafted by judicial decision." *In re Estate of Hoheiser*, 97 Ill. App. 3d 1077, 1081, 424 N.E.2d 25 (1981). A statute providing for a claim against an estate within a prescribed period is a grant of jurisdiction, not a general statute of limitations. *In re Estate of King*, 91 Ill. App. 2d 342, 349, 235 N.E.2d 276 (1968), *aff'd*, *Ruffing v. Glissendorf*, 41 Ill. 2d 412, 243 N.E.2d 236 (1968). The court has no power or jurisdiction to entertain a petition against an estate after the statutory period has passed. *King*, 91 Ill. App. 2d at 349. We affirm the trial court's rulings that Marilyn's claims were barred under section 18—12 because they were filed more than two years after Peter's death.

Marilyn contends her claim is not barred by section 18—12 because: (1) she filed a timely claim in California under California law; (2) the timely filing of her California claim is entitled to full faith and credit by Illinois courts; (3) the circuit court of Cook County has continuing jurisdiction over child support; (4) the limitations period should be tolled because of Jill's disability; and (5) the limitations period should be tolled because of an absent defendant.

We disagree with Marilyn's contention that her filing a claim in California within two years of Peter's death is sufficient to satisfy the limitations period in Illinois. She argues that the executor had notice of her claim by virtue of the fact that it was filed in California. She cites no authority in support of that proposition. Nor could we find any. We conclude section 18—12 of the Probate Act cannot be satisfied by the filing of an action in some other state. Certainly, mere notice to

the executor is irrelevant if the claim is not timely filed in Illinois. A failure to file a claim within the statutory period is a bar to the claim, even if the executor had personal knowledge of the claim. *Beider*, 268 Ill. App. 3d at 1096.

Marilyn contends she could not have filed a claim in Illinois because the courts lacked subject matter jurisdiction over Peter's estate. However, her claim was not made under the Probate Act, but pursuant to the Illinois Marriage and Dissolution of Marriage Act. The Illinois courts have jurisdiction over the case because the divorce was granted in Illinois. As Judge Ponce de Leon stated in his memorandum opinion and order, "Section 510 does not require that there be a pending Illinois Probate Estate in order for the section to apply. It merely states that if one is to bring a claim under 510 for relief, it must be done timely. And, the measurement of time used is that proscribed by the Illinois Probate Act of 1975, and that act says that the Petition must be within two (2) years after the death of the decedent."

Marilyn next contends the Illinois court failed to give full faith and credit to her timely claim filed in California. We find this argument was waived because it was never raised in the trial court. See *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413, 775 N.E.2d 951 (2002). If we were to entertain this argument, we would find the full faith and credit clause of the United States Constitution does not apply to the timeliness of a claim, but to a judgment by another state court. The full faith and credit clause requires Illinois courts to give the judgment of a sister state at least the *res judicata* effect that the sister state rendering the judgment would give to it. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 565, 739 N.E.2d 1263 (2000).

Marilyn next contends the Illinois court erred when finding it had no jurisdiction to hear the case. She contends her complaint sought enforcement and modification over an existing court order, not a new claim for support, as defined by the Probate Act. Her claims, however, were not based on the Probate Act, but on sections 510 and 513 of the Illinois Marriage and Dissolution of Marriage Act, which provide for enforcement, modification, revocation, or commutation of child support. These sections are governed by the timeliness limitations of section 18—12 of the Probate Act.

Marilyn's final contention is that the statute of limitations should be tolled, either for a person with disabilities, pursuant to section 13—211 of the Code of Civil Procedure (735 ILCS 5/13—211 (West 2000)), or due to an absent defendant, pursuant to section 13—208 of the Code of Civil Procedure (735 ILCS 5/13—208 (West 2000)). As we have said, section 18—12 of the Probate Act is not a general statute of

limitations subject to tolling. Section 18—12 is a nonclaim statute with no exception or tolling for people with disabilities. *Pratt v. Baker*, 48 Ill. App. 2d 442, 444-45, 199 N.E.2d 307 (1964). Because the purpose of the statute is the early and final settlement of estates, an exception for disabilities would destroy the object of the nonclaim statute by prolonging the administration of estates indefinitely. *Pratt*, 48 Ill. App. 2d at 444.

Even if section 18—12 were subject to tolling, section 13—211 would not apply. Section 13—211, which tolls the statute of limitations for persons with disabilities, is expressly limited to the actions listed in sections 13—201 through 13—210, none of which apply to this case. 735 ILCS 5/13—211 (West 2000).

■ For the reasons we have given, we conclude the two trial court judges correctly dismissed counts III, IV, V, and VI. We note that Judge Ponce de Leon also granted Mary's motion for judgment on the pleadings as to counts IV, V, and VI. Because Marilyn's complaint presents a material issue of fact, that motion should have been denied. See *Howard v. County of Cook*, 145 Ill. App. 3d 538, 540, 495 N.E.2d 1166 (1986). We reverse the order granting judgment on the pleadings.

### III. Cross-Appeal: Motion for Sanctions

■ Mary's motion for sanctions is not in the record. It is the appellant's burden to present a sufficiently complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984). Absent a complete record, we presume the order entered below conforms with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. We affirm the trial court's denial of sanctions.

### CONCLUSION

We affirm the rulings of the trial court dismissing counts III through VI of the complaint. We reverse the trial court's order granting judgment on the pleadings as to counts IV, V, and VI. We affirm the trial court's denial of sanctions on the cross-appeal.

No. 1—01—2695, Affirmed in part and reversed in part.

No. 1—02—0925, Affirmed.

SOUTH, P.J., and HOFFMAN, J., concur.