2013 ND 83

Holly OLSON, as personal representative of the Estate of Heidi Hanna, deceased, as special conservator of B.H., a minor, and as guardian of B.H., a minor, Plaintiff, Appellant and Cross–Appellee

v.

ESTATE OF Jeremy RUSTAD, deceased [Ronald Rustad, Personal Representative], Defendant, Appellee and Cross–Appellant.

No. 20120318.

Supreme Court of North Dakota.

May 20, 2013.

Tyler J. Siewert (argued) and David D. Schweigert (appeared), Bismarck, N.D., for plaintiff, appellant and cross-appellee.

Zachary E. Pelham (argued) and Patrick W. Durick (on brief), Bismarck, N.D., for defendant, appellee and cross-appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Holly Olson, as personal representative of the estate of Heidi Hanna and guardian and special conservator of B.H. and B.H., appealed from a summary judgment dismissing her wrongful death and survival actions against the estate of Jeremy Rustad ("estate") resulting from an airplane crash. The estate cross-appealed from the judgment. We conclude the district court correctly determined as a matter of law that the wrongful death and survival actions are barred by the nonclaim provisions of the Probate Code and that the terms of Rustad's aircraft insurance policy unambiguously limit coverage to $103,000 for this accident. We affirm.

I

[¶ 2] In the early morning hours of April 11, 2008, Jeremy Rustad and Heidi Hanna were killed in a plane crash in rural McLean County. Rustad was piloting his Cessna aircraft and Hanna was a passenger when the plane crashed near Rustad's farmstead in Roseglen about 1:30 a.m. Although there were no eye witnesses to the accident, a person sleeping in Rustad's trailer on the farmstead reported hearing an airplane flying low over the farmstead at about 1:30 a.m. The wreckage was discovered at 10:40 a.m. that morning, the bodies of Rustad and Hanna were located inside the plane, and an investigating law enforcement officer reported "they were obviously deceased for some time." The National Transportation Safety Board reported that the plane struck a 40–foot tall television antenna next to Rustad's trailer, struck some trees, and crashed in a hayfield about 500 feet west of the trailer. Rustad's blood alcohol content was .05 per-

cent. The Board determined the probable causes of the accident were: "The pilot failed to maintain obstacle clearance from the TV antenna during a low altitude maneuver. Contributing factors were the antenna, the night conditions, and pilot impairment due to alcohol." Autopsy results indicated Rustad's cause of death was "[m]ultiple head, neck, chest, abdominal, pelvic and extremity injuries [d]ue to airplane crash" and Hanna's cause of death was "[m]ultiple head, chest, abdominal, pelvic and extremity injuries [d]ue to airplane crash."

[¶ 3] The estate published a notice·to creditors of Rustad for three successive weeks beginning May 22, 2008, informing them they had three months to file claims. On September 24, 2008, Olson, as "co-personal representative of the estate of Heidi Hanna, deceased, caretaker of [B.H.], a minor, and temporary guardian of [B.H.], a minor," filed a claim against the estate asserting the estate was indebted to Hanna's estate and to Hanna's children for "a presently unliquidated amount to be determined by a jury for personal injuries and wrongful death sustained in an aircraft accident on or about April 11, 2008." On November 10, 2008, the estate "disallowed" Olson's claim in a document[1] that informed her the "Claim Against Estate shall be barred unless the claimant files a petition for allowance in this Court or commences a proceeding against the Personal Representative not later than 60 days after the mailing of this notice of disallowance."

[¶ 4] On January 7, 2009, Olson filed this wrongful death and survival action against the estate. The estate moved for summary judgment dismissing the action. The estate argued Olson's claims were barred because she did not serve the personal representative in that capacity and the failure to present her claims in the probate action made them res judicata. The estate also argued Olson could not show Hanna was injured before Rustad died, and therefore, both the wrongful death and survivor claims were barred under the nonclaim provisions of the Probate Code. The district court rejected the estate's arguments that service of process was insufficient and that the action was barred by res judicata. The court concluded Olson presented no evidence to show Hanna died before Rustad, and dismissed the wrongful death and survival actions because they were barred by the nonclaim provisions of the Probate Code.

[¶ 5] The district court further noted Rustad had an aircraft insurance policy and the nonclaim provisions did not prevent Olson from recovering to the extent of insurance coverage available for the accident. The estate subsequently filed a motion to amend the court's order, arguing the limits of Rustad's insurance policy were $103,000, and conceded for purposes of the motion that a jury would find Rustad at least 50 percent liable and award

---

1. A notice of disallowance must clearly and unequivocally indicate a claim is disallowed. *See Estate of Evans,* 901 P.2d 1138, 1142 (Alaska 1995); *Estate of Kotowski,* 704 N.W.2d 522, 528 (Minn.Ct.App.2005); *see also* N.D.C.C. § 30.1–19–06(1) (U.P.C. § 3–806). The estate's notice of disallowance complies with Form 57 contained in 2 Uniform Probate Code Practice Manual, at p. 704 (2nd ed.1977):

NOTICE OF ACTION ON CLAIM

TO: _____, Claimant:

_____, personal representative of the estate of _____, deceased, hereby wholly allows [disallows] the claim of _____, presented on _____, 19\_\_, in the amount of $_____. [Failure to protest this disallowance by filing a petition for allowance or commencing a proceeding within sixty days of the date hereof shall result in this claim being forever barred.] Date: _____, 19\_\_.

---

Personal Representative

Olson at least $103,000 in damages. Olson in response to the motion argued that a decision on the issue was not appropriate at the time and that the limits of the insurance policy were $1,000,000. The court ruled the language in the insurance policy unambiguously limited coverage under the circumstances to $103,000, and a judgment was entered in favor of Olson for $103,000.

## II

[¶ 6] Olson argues the district court erred in granting summary judgment dismissing her wrongful death and survival claims.

[¶ 7] Our standard for reviewing summary judgments is well-established:

Summary judgment is a procedural device used to promptly resolve a controversy on the merits without a trial if either party is entitled to judgment as a matter of law and the material facts are undisputed or if resolving the disputed facts would not alter the result. " 'Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts.' " Whether a district court has properly granted a motion for summary judgment is a question of law, which this Court reviews de novo on the record. When we review a district court's decision on a motion for summary judgment, we view the evidence in a light most favorable to the party opposing the motion and give the opposing party all favorable inferences. In determining whether summary judgment is appropriate, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence. The moving party must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A party resisting the motion for summary judgment "cannot merely rely on the pleadings or other unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact."

*Hayden v. Medcenter One, Inc.,* 2013 ND 46, ¶ 6, 828 N.W.2d 775 (quoting *Riedlinger v. Steam Brothers, Inc.,* 2013 ND 14, ¶ 10, 826 N.W.2d 340).

[¶ 8] Wrongful death actions are authorized by N.D.C.C. ch. 32–21. Section 32–21–01, N.D.C.C., provides:

Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured, if death had not ensued, to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation, limited liability company, or company which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or of the tort-feasor, and although the death shall have been caused under such circumstances as amount in law to felony.

"Wrongful death actions are intended to compensate the survivors of the deceased for the losses they have sustained as a result of a wrongful killing." *Sheets v. Graco, Inc.,* 292 N.W.2d 63, 66 (N.D.1980). A wrongful death action accrues at the time of the death of the party injured. *Id.* at 67.

[¶ 9] The relevant survival statute in this case is N.D.C.C. § 28–01–26.1, which provides that "[n]o action or claim for relief, except for breach of prom-

ise, alienation of affections, libel, and slander, abates by the death of a party or of a person who might have been a party had such death not occurred." "Survival statutes 'are remedial in nature, and are intended to permit recovery by the representatives of the deceased for damages the deceased could have recovered had he lived.... A survival action merely continues in existence an injured person's claim after death as an asset of his estate.'" *Weigel v. Lee*, 2008 ND 147, ¶ 12, 752 N.W.2d 618 (quoting *Sheets*, 292 N.W.2d at 66–67). Olson's survival action is based on negligence. "[S]urvival actions accrue, or come into existence as a legally enforceable right, not at the time of the death of the injured party, but at the time the deceased was first injured." *Sheets*, at 67. This Court has not resolved, and is divided over the question whether the discovery rule applies to extend the accrual of a survival action beyond the date of the decedent's death. *See Mertz v. 999 Quebec, Inc.*, 2010 ND 51, ¶¶ 58–62, 780 N.W.2d 446.

■ [¶ 10] In *Ness v. St. Aloisius Hosp.*, 301 N.W.2d 647, 652 (N.D.1981), this Court explained:

> A wrongful death action, like a survival action, is dependent upon the injuries sustained by the deceased, and ensues from the injuries which caused his death. However, a wrongful death action is an entirely new cause of action for the benefit of persons close in relationship to the deceased who have suffered injury as a result of the wrongful death while a survival action permits recovery by the representatives of the deceased for damages the deceased could have recovered if he had lived.

A wrongful death action and a survival action, which both sound in tort in this case, are "claims" subject to the nonclaim provisions of the Probate Code. *See generally, e.g., Moultis v. Degen*, 279 S.C. 1, 301 S.E.2d 554, 557–58 (1983).

[¶ 11] Under N.D.C.C. § 30.1–19–01 (U.P.C. § 3–801), a personal representative of an estate is required to mail a copy of a "notice to creditors" "to those creditors whose identities are known to the personal representative or are reasonably ascertainable and who have not already filed a claim." *See Estate of Elken*, 2007 ND 107, ¶ 9, 735 N.W.2d 842. The nonclaim statute, N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803), sets time limits for presenting claims against an estate and provides in relevant part:

1. All claims against a decedent's estate which arose before the death of the decedent, including claims ... founded on ... tort, or other legal basis ... are barred against the estate, the personal representative, the heirs and devisees of the decedent, and nonprobate transferees unless presented as follows:

 a. Within three months after the date of the first publication and mailing of notice to creditors if notice is given in compliance with section 30.1–19–01....

 b. Within three years after the decedent's death, if notice to creditors has not been published and mailed.

2. All claims against a decedent's estate which arise at or after the death of the decedent, including claims ... founded on ... tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

 ....

 b. Any other claim, within three months after it arises.

3. Nothing in this section affects or prevents:

. . . .

b. To the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which the decedent or personal representative is protected by liability insurance.

Simply put, the statute provides that claims arising before death must be brought within three months after the date of first publication and mailing of notice to creditors, and if notice to creditors has not been published or mailed, within three years of death. If the claim arises at or after death, the claim must be brought within three months after it arises. The time limits do not apply to proceedings to establish liability of the decedent up to the limits of available insurance protection.

## A

[¶ 12] Olson argues her claims were timely filed because she was a "reasonably ascertainable" creditor under N.D.C.C. § 30.1–19–01 (U.P.C. § 3–801) who did not receive actual notice by mail of the notice to creditors.

[¶ 13] Under N.D.C.C. § 30.1–19–01 (U.P.C. § 3–801), "a reasonably ascertainable creditor includes a creditor who regularly submits billings to the decedent or the decedent's estate and to whose billings the personal representative has had access." Actual notice need not be given " 'to those with mere "conjectural" claims.' " *Elken*, 2007 ND 107, ¶ 9, 735 N.W.2d 842 (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)). This is not a case in which the personal representative had "undisputed awareness" of "litigation in process" before the decedent's death. *Longmire v. Estate of*

*Ruffin*, 909 So.2d 443, 444 (Fla.Ct.App. 2005). Rather, the undisputed evidence in this case reflects that Holly Olson, who is Hanna's sister, told Rustad's father, the personal representative of Rustad's estate, that no tort claims would be pursued. The personal representative of Rustad's estate stated in an affidavit:

Holly called me about 3 or 4 weeks after the funerals. She told me that this plane crash was an accident and that they would never sue over this matter. Holly did call me a second time asking for a copy of the funeral handout. She never mentioned anything about bringing a lawsuit against my son's estate. I took her at her word and did not believe any lawsuit or claim would be brought.

[¶ 14] Olson does not dispute the statements attributed to her in the affidavit, but argues under N.D.C.C. § 30.1–18–17 (U.P.C. § 3–717) she had no authority to bind Hanna's estate because she serves only as a corepresentative. However, the record does not reveal the identity of any corepresentatives of Hanna's estate and Olson is the corepresentative who instituted the lawsuit after informing the personal representative of Rustad's estate that no lawsuit would be forthcoming. "Persons dealing with a corepresentative, if actually unaware that another has been appointed to serve with the corepresentative or if advised by the personal representative with whom they deal that the representative has authority to act alone for any of the reasons mentioned herein, are as fully protected as if the person with whom they dealt had been the sole personal representative." *Id.* Olson's argument is without merit.

[¶ 15] Under these circumstances, we conclude Olson was not a reasonably ascertainable creditor as a matter of law, and that she was not entitled to actual notice

under N.D.C.C. § 30.1–19–01 (U.P.C. § 3–801).

B

[¶ 16] Olson argues the district court erred in concluding her wrongful death action was barred by the nonclaim statute. She contends the court erroneously construed N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803) as a jurisdictional statute that absolutely bars untimely claims and does not permit tolling under N.D.C.C. § 28–01–25(1) for claims brought by minors.

[¶ 17] Section 28–01–25, N.D.C.C., provides:

> If a person who is entitled to bring an action other than for the recovery of real property, or for a penalty or forfeiture, or against a sheriff or other officer for an escape is:
>
> 1. Under the age of eighteen years;
>
> 2. Insane; or
>
> 3. Imprisoned on a criminal charge or in execution under the sentence of a criminal court for a term less than for life,
>
> at the time the claim for relief accrues, the time of such disability is not a part of the time limited for the commencement of the action. However, the period within which the action must be brought cannot be extended more than five years by any such disability except infancy, nor can it be extended in any case longer than one year after the disability ceases. In cases alleging professional malpractice, the extension of the limitation due to infancy is limited to twelve years.

Under the statute, if a claim for relief accrues when the claimant is less than 18 years old, the period of minority is not part of the time limited for bringing the claim. *See BASF Corp. v. Symington*, 512 N.W.2d 692, 695 (N.D.1994).

[¶ 18] The district court ruled N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803) was not tolled under N.D.C.C. § 28–01–25(1) because the nonclaim statute is "jurisdictional" and the court was therefore "without jurisdiction to hear the claim because it was not brought within the time period prescribed by the statute." The court relied on *Estate of Stirling*, 537 N.W.2d 554, 558 (N.D.1995), in which this Court cited authority from other jurisdictions for the proposition that compliance with the time limits of a nonclaim statute is jurisdictional and a creditor's failure to present a claim within the time limit deprives the court of jurisdiction to act:

> [O]ne of the prime purposes of the Uniform Probate Code [is] "[t]o promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." NDCC 30.1–01–02(2)(c). "[C]ompliance with the time limits of a nonclaim statute for the presentation of a claim is jurisdictional." *Estate of Dire*, 851 P.2d 271, 273 (Colo.App.1993). A creditor's failure to present a claim within the time limited leaves a probate court without jurisdiction to act. *In re Washburn Estate*, 195 Mich.App. 42, 488 N.W.2d 787 (1992). Thus, a personal injury lawyer must carefully monitor her files because, if a potential defendant dies before being sued for damages, it may be a lot later than the lawyer thinks.

*See also Linster v. Holmen*, 116 N.W.2d 616, 618 (N.D.1962) (failure to timely file claim under former probate statute "is jurisdictional and destroys any cause of action on the claim").

[¶ 19] The *Stirling* Court's statement that the nonclaim statute is jurisdictional in nature is unfortunate because it represents an outmoded view of the concept of jurisdiction and conflicts with this Court's more recent statements on the subject. In

*Interest of T.H.*, 2012 ND 254, ¶ 7, 825 N.W.2d 844, this Court explained:

A court has jurisdiction to issue a valid order if it has jurisdiction over the parties and the subject matter of the action. *See, e.g., Mills v. City of Grand Forks*, 2012 ND 56, ¶ 10, 813 N.W.2d 574, and cases collected therein. The juvenile court had jurisdiction over the parties and had subject matter jurisdiction because it "had the 'power to hear and determine the general subject involved in the action.'" *Id.* at ¶ 11 (quoting *Giese v. Giese*, 2004 ND 58, ¶ 6, 676 N.W.2d 794). It is well settled that "unless a statute imposing a time limit declares that the time limit is jurisdictional, we will not treat the time limit as affecting the jurisdiction of a court or administrative agency." *Henry v. Securities Comm'r*, 2003 ND 62, ¶ 10 n. 2, 659 N.W.2d 869; *see also Interest of J.H.*, 2007 ND 1, ¶ 1, 729 N.W.2d 334; *Interest of M.D.*, 1999 ND 160, ¶ 16, 598 N.W.2d 799; *Interest of P.L.P.*, 556 N.W.2d 657, 659 (N.D.1996); *Interest of Nyflot*, 340 N.W.2d 178, 183 (N.D.1983).

[¶ 20] Section 30.1–19–03, N.D.C.C. (U.P.C. § 3–803), does not declare that the time limits for presenting claims are jurisdictional. The district court had jurisdiction over the parties and had subject matter jurisdiction over the proceedings. While it may be an abstract distinction, we disapprove *Stirling* to the extent it holds the nonclaim statute is jurisdictional. After this Court in *Stirling* relied on the Colorado Court of Appeals decision in *Estate of Dire*, the Colorado Supreme Court in *Estate of Ongaro*, 998 P.2d 1097, 1103–04 (Colo.2000), also concluded that the Colorado nonclaim statute bars, but does not divest courts of jurisdiction over untimely claims against estates. We likewise conclude N.D.C.C. § 30.1–19– 03 (U.P.C. § 3–803) does not divest a court of jurisdiction over untimely filed claims.

[¶ 21] Removing the jurisdictional label from N.D.C.C. § 30.1–19–03 (U.P.C. § 3– 803) does not necessarily lead to the conclusion that the statute permits tolling. The Editorial Board Comment to N.D.C.C. § 30.1–19–02 (U.P.C. § 3–802) specifically refers to "the nonclaim provisions of section 30.1–19–03," and the Editorial Board Comment to N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803) also refers to the statute's effect as a "non-claim bar." This Court has repeatedly described N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803) as a "nonclaim statute." *See, e.g., Steen and Berg Co. v. Berg*, 2006 ND 86, ¶¶ 6–7, 713 N.W.2d 87. A "nonclaim statute," by definition, is "[a] law that sets a time limit for creditors to bring claims against a decedent's estate. Unlike a statute of limitations, a nonclaim statute is usu[ally] not subject to tolling and is not waivable." *Black's Law Dictionary* 1544 (9th ed.2009); *see also* 34 C.J.S. *Executors and Administrators* § 558 (2009); 51 Am. Jur.2d *Limitation of Actions*, § 3 (2011); 54 C.J.S. *Limitations of Actions* § 5 (2010). However, nonclaim statutes are also referred to as "special statutes of limitation." 51 Am.Jur.2d *Limitation of Actions*, § 3, at p. 491 (2011) (footnote omitted).

[¶ 22] Before the North Dakota Legislature adopted the Uniform Probate Code in 1973, this Court had also considered the state statutes imposing time limitations for presenting claims against decedents' estates to be nonclaim statutes rather than statutes of limitation. *See, e.g., Linster*, 116 N.W.2d at 618; *In re Kaspari's Estate*, 71 N.W.2d 558, 567–68 (N.D.1955); *Graber v. Bontrager*, 69 N.D. 300, 308, 285 N.W. 865, 870 (1939). In *Reith v. County of Mountrail*, 104 N.W.2d 667, 672 (N.D. 1960) (internal citation and quotation

marks omitted), this Court summarized the difference between nonclaim statutes and statutes of limitation: "The non-claim statute imposes a condition precedent to the enforcement of a right of action, while statutes of limitation create defenses that must be pleaded and may be waived."

[¶ 23] Nothing in the legislative history of the adoption of the Uniform Probate Code reflects any intention to alter the treatment of N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803) from a nonclaim statute to a statute of limitations. First, the inability of the personal representative to waive the time limitations is demonstrated by N.D.C.C. § 30.1–19–06(1) (U.P.C. § 3–806), which provides in relevant part that "[t]he personal representative may not change a disallowance of a claim after the time for the claimant to file a petition for allowance or to commence a proceeding on the claim has run and the claim has been barred." Second, the statute, as originally proposed and adopted, allowed four months for creditors to file claims against an estate. *See* 1973 N.D. Sess. Laws ch. 257, § 1. Concern was expressed about the length of time allowed to file claims, and a speaker urged that the legislature should not adopt the uniform law "if it does not cut the time and the cost" of administering an estate. *Hearing on H.B. 1040 Before the House Judiciary Comm.*, 43rd Legis. Sess. (Jan. 22, 1973) (testimony of Arlo Beggs, representing the North Dakota Farmers Union). It was suggested that four months was "too long" and the period be shortened to two months because "Idaho and Alaska have been boasting that they can settle all this in 32 days." *Hearing on H.B. 1040 Before the House Judiciary Comm.*, 43rd Legis. Sess. (Jan. 22, 1973) (testimony of Rep. Rundle). The legislature did not reduce the period of time for filing claims from four months to three months until 1977. *See* 1977 N.D. Sess. Laws ch. 298, ¶ 3. But, the legislative history thoroughly supports this Court's repeated observations that the primary objective of the nonclaim statute is the expeditious and orderly processing of decedents' estates. *See, e.g., Murphy v. Murphy*, 1999 ND 118, ¶ 24, 595 N.W.2d 571.

[¶ 24] This Court has not applied the disability tolling provisions of N.D.C.C. § 28–01–25 to a nonclaim statute. Olson has not cited, and we have not found, any cases from Uniform Probate Code jurisdictions that have approved tolling the nonclaim statute during minority or for any of the other disabilities listed under statutes similar to N.D.C.C. § 28–01–25. Rather, based on the theory that a nonclaim statute is jurisdictional, or based on the fundamental difference between nonclaim or special statutes of limitation and general statutes of limitation, courts in Uniform Probate Code jurisdictions have held that their nonclaim statutes are not tolled for people with statutory disabilities similar to those specified in N.D.C.C. § 28–01–25. *See Estate of Daigle*, 634 P.2d 71, 76–77 (Colo.1981) (minority); *Estate of Allen*, 255 Mont. 469, 843 P.2d 781, 784 (1992) (imprisonment); *Estate of Ostler*, 227 P.3d 242, 246 (Utah 2009) (minority). Furthermore, most courts in jurisdictions that have not adopted the Uniform Probate Code have reached the same result. *See, e.g., Bartman v. Estate of Bartman*, 83 Cal.App.3d 780, 148 Cal.Rptr. 207, 209 (1978) (minority); *Glass v. Benkert*, 18 Cal. App.3d 322, 95 Cal.Rptr. 735, 738 (1971) (minority); *Marriage of Epsteen*, 339 Ill. App.3d 586, 274 Ill.Dec. 379, 791 N.E.2d 175, 186 (2003) (people with disabilities); *Estate of Verdak v. Butler Univ.*, 856 N.E.2d 126, 135 (Ind.Ct.App.2006) (equitable tolling); *Burnett v. Villaneuve*, 685 N.E.2d 1103, 1109 (Ind.Ct.App.1997) (equitable tolling); *Estate of Kennedy*, 46 Ohio App.3d 128, 546 N.E.2d 220, 221–22 (1988) (unsound mind). The practical reasoning

of the courts in states that have and have not adopted the Uniform Probate Code is the same. "Because the purpose of the statute is the early and final settlement of estates, an exception for disabilities would destroy the object of the nonclaim statute by prolonging the administration of estates indefinitely." *Epsteen,* at 186. The "application of the disability toll to the nonclaim statute would cast substantial doubt on the finality of any distribution to an heir or devisee and the distributee's right thereto." *Daigle,* at 76.

[¶ 25] Olson relies on the Minnesota Supreme Court's decision in *Martz v. McMahon,* 114 Minn. 34, 129 N.W. 1049, 1050–51 (1911), in which the court ruled the period for filing claims against an estate was tolled during a child's minority. It is clear from the opinion that the court treated the filing period as a general "statute of limitations." *Id.* at 1051. In *Jefferys v. Tolin,* 90 N.C.App. 233, 368 S.E.2d 201, 202 (1988), the court ruled that the period for filing a claim against an estate is tolled during a person's minority. North Carolina has not adopted the Uniform Probate Code and it is also clear that the court treated the claims period as a general statute of limitations. *Id.* Furthermore, the court ruled "[w]here a guardian ad litem is appointed for a minor, the limitation period begins to run from the time of the appointment." *Id.* Compare M. McCarthy, Annot., *Effect of appointment of legal representative for minor on running of state statute of limitations against minor,* 1 A.L.R. 6th 407 (2005) (noting split of authority on the issue). The legal authorities lend scant support for Olson's position.

[¶ 26] Olson argues this Court should follow the Colorado Court of Appeals decision in *De Avila v. Estate of DeHerrera,* 75 P.3d 1144 (Colo.Ct.App.2003), because "Colorado's construction of the UPC has become exceedingly persuasive in North Dakota." Some background is necessary. In *Ongaro,* 998 P.2d at 1104, the Colorado Supreme Court held that the nonclaim statute "does not divest courts of jurisdiction over untimely claims against estates," and instead interpreted the nonclaim statute "to bar the enforcement of late-filed claims against an estate." The court said that "the deadline for filing claims established by [the nonclaim statute] *generally* cannot be waived or tolled," and pointed out that "should a personal representative's conduct rise to the level of fraud, section 15–10–106, 5 C.R.S. (1999), provides a remedy to injured claimants." *Ongaro,* at 1104, 1105 (emphasis added). Section 15–10–106, Colo.Rev.Stat. (2010), is substantively identical to N.D.C.C. § 30.1–01–03 (U.P.C. § 1–106), and provides in relevant part:

> Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not.

[¶ 27] In *De Avila,* 75 P.3d at 1148, the court emphasized the Colorado Supreme Court's use of the word "generally" in the *Ongaro* decision and agreed with the plaintiff's position that "under some circumstances the court could address the merits of an untimely claim." Specifically, the appellate court adopted the plaintiff's argument "that the court should apply the time bar created by § 15–12–803 [the Colorado nonclaim statute] only when addressing the merits of the late-filed claim would delay the settlement of the estate and distribution of assets." *De Avila,* at

1147. The Colorado Supreme Court denied a writ of certiorari to review the decision.

[¶ 28] Because of the "uncertainty" caused by the *De Avila* decision and the Colorado Supreme Court's refusal to clarify the status of the law, the Colorado Legislature amended the nonclaim statute. M. Schwartz, *New Developments in Creditor Claims Provisions of the Colorado Probate Code*, 35 Colo. Law. 67, 71 (2006). The nonclaim statute, Colo.Rev.Stat. § 15–12–803 (2010), was amended to add subsections (4) and (5):

> (4) This section is a nonclaim statute that cannot be waived or tolled, and it shall not be considered a statute of limitations.
>
> (5) Unless section 15–10–106 is determined to apply, and subject to the provisions of subsection (3) of this section, claims that are not presented in accordance with subsections (1) and (2) of this section are barred even if addressing the merits of the claim would not delay the settlement and distribution of the estate.

"The revisions to § 15–12–803(4) and (5) are specifically meant to clarify what was believed to be the already existing law." M. Schwartz, at 71. The *De Avila* decision was legislatively abrogated and is no longer the law in Colorado, and we decline to embrace it.

 [¶ 29] We follow the holdings of the vast majority of courts and conclude the nonclaim provisions of N.D.C.C. § 30.1–19–03 (U.P.C. § 3–803), are not subject to the tolling provisions of N.D.C.C. § 28–01–25(1) during a person's minority. If tolling is to be applied to the nonclaim statute, it is for the legislature to do so. The nonclaim provisions, however, cannot be used to perpetrate a fraud, and any victim of fraud is afforded a remedy under N.D.C.C. § 30.1–01–03 (U.P.C. § 1–106). *See also Estate of Frandson*, 383

N.W.2d 807, 809 (N.D.1986) ("Although equitable estoppel has been recognized as an exception to compliance with non-claim statutes, there must, at a minimum, be some form of affirmative deception involved before the doctrine may be invoked."). It is undisputed that Olson's claim against the estate was not filed within three months of Rustad's death, and Olson has not alleged fraud on the part of the estate. We conclude the district court did not err in concluding as a matter of law that Olson's wrongful death action was barred under N.D.C.C. § 30.1–19–03(2)(b) (U.P.C. § 3–803).

### C

[¶ 30] Olson argues the district court erred in concluding her survival action was barred by the nonclaim statute.

·[¶ 31] The district court concluded as a matter of law that Olson's survival action also was barred by N.D.C.C. § 30.1–19–03(2)(b) (U.P.C. § 3–803). The court noted that a survival action accrues at the time of injury and that it was "essential to Olson's claim that impact with the television antenna injured Hanna before Jeremy Rustad died." The estate presented an affidavit from a physician who had reviewed the evidence in the case and concluded:

> In reviewing the autopsy reports, police reports, and photographs I have come to the following conclusions based on a reasonable degree of medical certainty. I am able to state with a reasonable degree of medical certainty that the injuries sustained in the crash by Mr. Rustad would have caused him to die instantly at impact with the ground. I am able to state with a reasonable degree of medical certainty that the injuries sustained in the crash by Ms. Hanna would have caused her to die at the

time of impact, or seconds after impact, with the ground.

From this undisputed affidavit, the court concluded the estate had shown "Hanna died simultaneous to or after Jeremy Rustad," and because no claim arose before his death, N.D.C.C. § 30.1–19–03(1) (U.P.C. § 3–803) was not applicable.

[¶ 32] Olson argues the district court failed to distinguish between the terms "accrue" and the statutory language "arise" and "arose." She claims the survival action "arose" when Rustad failed to exercise ordinary care, and that occurred when he struck the television antenna with the plane. Consequently, she contends the claim "arose" before Rustad's death. Olson did not argue in the district court or before this Court that the discovery rule applies to extend the accrual of a survival action beyond the date of the decedent's death. *See Mertz*, 2010 ND 51, ¶¶ 58–62, 780 N.W.2d 446.

[¶ 33] Even if we agreed with Olson's argument, the result would be the same. If the survival action arose before Rustad's death, the governing provision of the nonclaim statute would be N.D.C.C. § 30.1–19–03(1)(a), because Olson was not a reasonably ascertainable creditor entitled to actual notice by mail. It is undisputed that the estate published a notice to creditors and the first publication date was May 22, 2008. Olson did not file her claim with the estate until September 24, 2008, after the three months allowed for filing claims under the statute had expired.

[¶ 34] We conclude the district court did not err in ruling Olson's survival action was barred as a matter of law under the nonclaim statute.

### D

[¶ 35] Olson argues the district court erred in amending the order and ruling that the amount of available insurance liability coverage for the plane crash was $103,000 under the circumstances. She contends the issue of insurance policy limits was not properly before the court, and even if it was, the court erred in refusing to allow discovery relating to the policy language.

[¶ 36] Because the Uniform Probate Code nonclaim statute addresses insurance coverage, it is not unusual for a trial court to consider the limits of available insurance coverage in proceedings to determine whether claims are barred under the nonclaim statute. *See Daigle*, 634 P.2d at 73–74, 79. After the estate moved to amend the order, Olson responded that it was "necessary to engage in further discovery of [the insurance coverage] issue under N.D.R.Civ.P. 56(f)." Olson did not file a motion for additional time for discovery under N.D.R.Civ.P. 56(f), did not file an affidavit detailing the need for more time, and did not explain in her brief how any additional information would preclude summary judgment or why the information had not been previously obtained. *See Hayden*, 2013 ND 46, ¶¶ 8–9, 828 N.W.2d 775. This case had been ongoing for more than three years. Olson also argued the policy provided for $1,000,000 of coverage for "each occurrence." The district court reasoned the insurance policy unambiguously provided $103,000 of coverage under the circumstances and that further discovery "would not lead to any additional information on the policy." We conclude the court did not abuse its discretion in refusing to allow additional time for discovery.

[¶ 37] Interpretation of an insurance contract is a question of law fully reviewable on appeal, and we independently examine and construe the insurance contract to determine coverage. *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 9, 816 N.W.2d 31. If the language of an insur-

ance policy is clear on its face, there is no room for construction. *Id.*

[¶ 38] The declarations page of Rustad's insurance policy lists the limits of liability coverage for "SINGLE LIMIT BODILY INJURY, INCLUDING PASSENGERS, AND PROPERTY DAMAGE" as $1,000,000 for "EACH OCCURRENCE." The policy further states "PASSENGER LIABILITY LIMITED TO" $100,000 for "EACH PERSON." The policy states "EXPENSES FOR MEDICAL SERVICES" is $3,000 for "EACH PERSON" and $12,000 for "EACH OCCURRENCE." A 2008 endorsement to the policy explains:

> AND FURTHER PROVIDED THAT IF THE DECLARATIONS ARE COMPLETED TO SHOW "PASSENGER LIABILITY LIMITED TO", THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES, INCLUDING BUT NOT LIMITED TO DAMAGES FOR LOSS OF CONSORTIUM, LOSS OF ASSISTANCE, LOSS OF SERVICES, LOSS OF CARE, LOSS OF EARNINGS, LOSS OF SUPPORT, MENTAL ANGUISH, GRIEF AND INFLICTION OF EMOTIONAL DISTRESS, REGARDLESS OF WHO MAKES THE CLAIM, ARISING FROM, DERIVING FROM, RELATED TO OR BECAUSE OF BODILY INJURY TO PASSENGERS SHALL NOT EXCEED:
>
> (A) AS RESPECTS ANY ONE PASSENGER, THE AMOUNT STATED IN THE DECLARATIONS AS APPLICABLE TO "EACH PERSON".
>
> (B) AS RESPECTS TWO OR MORE PASSENGERS, SUBJECT TO THE ABOVE PROVISIONS RESPECTING ANY ONE PASSENGER, THE AMOUNT STATED IN THE DECLARATIONS AS APPLICABLE TO "EACH PERSON" MULTIPLIED BY THE NUMBER OF PASSENGERS ON BOARD THE AIRCRAFT OR BY THE NUMBER OF PASSENGER SEATS AS STATED IN ITEM 5 FOR AIRCRAFT INVOLVED, WHICHEVER IS LESS, BUT IN NO EVENT SHALL THE TOTAL LIABILITY OF THE COMPANY FOR BODILY INJURY TO PERSONS OR PASSENGERS AND PROPERTY DAMAGE FOR ANY ONE OCCURRENCE EXCEED THE LIMIT OF LIABILITY STATED IN THE DECLARATIONS AS APPLICABLE TO "EACH OCCURRENCE."
>
> FOR THE PURPOSE OF DETERMINING THE LIMIT OF THE COMPANY'S LIABILITY, ALL BODILY INJURY AND PROPERTY DAMAGE ARISING OUT OF CONTINUOUS OR REPEATED EXPOSURE TO SUBSTANTIALLY THE SAME GENERAL CONDITIONS SHALL BE CONSIDERED AS ARISING OUT OF THE OCCURRENCE.

[¶ 39] The reference to $1,000,000 in the declarations page clearly refers to the insurance company's limit of liability when more than one passenger is injured during an accident. These provisions unambiguously limit coverage for injuries to a single passenger at $103,000. *See Daigle,* 634 P.2d at 79.

[¶ 40] We conclude the district court did not err in ruling the amount of insurance available to Olson is $103,000.

### III

[¶ 41] We have considered the other arguments raised by the parties and do

not address them because they are either unnecessary to the decision or are without merit. The judgment is affirmed.

[¶ 42] JOHN C. McCLINTOCK, JR., D.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

[¶ 43] The Honorable JOHN C. McCLINTOCK, D.J., sitting in place of SANDSTROM, J., disqualified.